WALTER W. WALSH, TAX COMMISSIONER v. NEW HAVEN BANK ET AL., EXECUTORS (ESTATE OF ELLA A. DANN)

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 68418

Memorandum filed April 8, 1947.

*William L. Hadden,* Attorney General and *Frederick W. Dauch,* Assistant Attorney General, for the Appellants.

*Bertrand B. Salzman, Samuel H. Platcow* and **Thompson Dean,** all of New Haven, for the Appellees.

INGLIS, J. This is an appeal from a decree of the Probate Court for the district of New Haven determining that a trust fund created by the decedent for the benefit of Reine R. Nichols is not subject to the state succession tax.

Mrs. Nichols is a registered nurse. In 1939 she was employed as a nurse by Mrs. Dann, who was then in her eightieth year of age. By the beginning of 1943 a Miss Considine, who had been acting as companion for Mrs. Dann, was in poor health and most of her duties fell upon the shoulders of Mrs. Nichols. At that time the compensation which Mrs. Nichols was receiving was at the rate of $42 per week, somewhat less than the current compensation for registered nurses. Mrs. Nichols complained to Mrs. Dann and Howard C. Fulton, who was the latter's business adviser, that she was not being adequately compensated and threatened to leave. Mrs. Dann did not wish to lose Mrs. Nichols' services and in May, 1943, after several conferences, it was agreed that Mrs. Dann would set up a trust fund, with Mr. Fulton as trustee, which fund would be paid to Mrs. Nichols after Mrs. Dann's death, provided Mrs. Nichols remained in Mrs. Dann's employ during the remainder of the latter's life. The amount of the trust fund was not mentioned and Mrs. Nichols never knew what that amount was until after Mrs. Dann's death. It was understood, however, that Mrs. Dann would put into the fund, either at the beginning or later

on, such sums as she thought would fairly compensate Mrs. Nichols for her services rendered or to be rendered. In consideration of Mrs. Dann's setting up the trust Mrs. Nichols definitely agreed to remain in Mrs. Dann's employ for the rest of Mrs. Dann's life.

Pursuant to that agreement, on May 19, 1943, Mrs. Dann turned over to Mr. Fulton $2308.41, the same having been withdrawn from a similar trust fund for the benefit of Miss Considine, and he deposited that amount in The New Haven Savings Bank in his name as trustee for Reine R. Nichols, specifying the terms of his trust, in order to comply with § 1216e, General Statutes, Cum. Sup. 1939, to be that "the principal and interest of said deposit account (including all deposits hereafter made by the undersigned to the credit of said account) belong to said beneficiary but the undersigned during his lifetime reserves the right to withdraw the same in whole or in part at any time and you shall be fully protected in making payment to the undersigned." On October 25, 1943, the sum of $2000, and on October 26, 1944, the sum of $584.82, were added to the account, so that at the time of Mrs. Dann's death the account with the interest added to the deposits amounted to $5099.51.

Mrs. Nichols continued in Mrs. Dann's employ down to the date of the latter's death, which occurred December 25, 1945. From and after January 1, 1943, she performed not only the services of a nurse but also those of a companion. She was regularly on duty from 9 o'clock in the morning until 5 o'clock in the afternoon but was subject to call at all hours and was frequently called outside of her regular hours. In addition to performing the ordinary duties of a nurse she took full responsibility for the running of the household. She regularly purchased all of the supplies and did other shopping for Mrs. Dann. She prepared most of the meals. She employed and supervised the other employees, who were regularly another nurse for night duty and a part-time companion who came in from 5 to 9 o'clock each evening. She took care of Mrs. Dann's correspondence, entertained her visitors and visited Mrs. Dann's friends on Mrs. Dann's behalf. In short, she took full management of the care of Mrs. Dann and all of her household affairs and social responsibilities. The services which she rendered Mrs. Dann from January 1, 1943, to Mrs. Dann's death were reasonably worth an average of $85 per week, or a total for the period of

$13,165. For the services rendered during the period Mrs. Nichols has received compensation as follows: in 1943, $2354; in 1944, $2435; in 1945, $3004; and since Mrs. Dann's death, $1500. This totals $9293 and leaves $3872 as the value of her services rendered which have not been compensated for outside of the trust fund.

The statute which controls the deceision of the question involved in this case is § 395e, Cum. Sup. 1939. That section, in so far as it is applicable, reads as follows: "The transfers enumerated in section 1360 shall be taxable if made: . . . (d) by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor; . . . (e) in payment of a claim against the estate of a deceased person arising from a contract made by him and payable by its terms at or after his death, . . .; (f) in any transfer, specified in subdivisions (c) (d), and (e) of this section should be made for a valuable consideration, so much thereof as is the equivalent in money value of the money value of the consideration received by the transferor shall not be taxable, but the remaining portion shall be taxable."

Clearly, the creation of the trust fund involved in this case was a transfer which comes within those described in both subsection (d) and subsection (e) of the statute. Although the word "grant" may be used in the limited sense of conveyance by way of gift it also is commonly used to mean any sort of a transfer of title whether by gift or by contract. 28 C. J. 819. It is in the latter sense that the word is used in subsection (d). The subsection reads "by gift or grant," so obviously the legislature intended "grant" to include something other than a gift. And that it is intended to include a transfer for a consideration is made certain by the fact that subsection (f) contemplates that some of the transfers included in subsection (d) may be for a valuable consideration. There can be no question that under the agreement between Mrs. Dann and Mrs. Nichols, although the right to the trust fund vested in Mrs. Nichols at the time it was set up subject to the condition that she continue in Mrs. Dann's employ for the latter's life, Mrs. Nichols had no right to either the possession or the enjoyment of the fund or any part of it until Mrs. Dann's death. Her right to the possession and enjoyment of it, and indeed her title to it, could not be determined until Mrs. Dann died. As is said in *Cochran* v. *McLaughlin,* 129 Conn. 176, 179: " 'Apparently the Legislature intended to reach for the purpose of taxation the shifting

of the enjoyment of property—the 'economic benefits' thereof or 'economic interest' therein—from a former owner at his death, even though such shifting of enjoyment followed necessarily from a prior transfer of title . . .' " It was just such a shifting as was had in this case.

Likewise, when Mrs. Dann entered into the contract to create the trust fund, she thereby was making provision for the payment of a claim which otherwise would have been a claim against her estate. Her agreement was for the payment for services rendered and to be rendered but for payment to be made after her death. It was, therefore, a transfer which, in the words of subsection (e) of the statute, was made in payment of a claim against the estate of a deceased person arising from a contract made by him and payable by its terms at or after his death.

It follows that the transfer was taxable.

On the other hand, the transfer was for a valuable consideration. The consideration moving from Mrs. Nichols to Mrs. Dann was twofold. It was, first, the assurance that Mrs. Dann would receive Mrs. Nichol's services for the remainder of her life and, second, the services themselves rendered and to be rendered from about January 1, 1943, to December 25, 1945. The first of these considerations cannot be valued in money. It therefore should not be taken into account in applying subsection (f) of the act. The services actually rendered, however, did have a money value. If Mrs. Dann had paid for those services as they were rendered, her estate would have been diminished by the amount so paid. Or, to put it the other way around, her estate has been enriched by the value of the services rendered in return for the creation of the trust fund.

Subsection (f) of the statute removes from taxability such portions of a transfer as the one here involved as satisfy three essentials: (1) there must be a valuable consideration, (2) the consideration must be received by the transferor and (3) so much of the property transferred as is the equivalent in money value of the money value of the consideration shall not be taxable. *Mossberg v. McLaughlin*, 127 Conn. 48, 51. "To the extent to which consideration in money or its equivalent goes to increase the estate of the decedent, the deduction would be within the intent of the statute." *Mossberg v. McLaughlin,* supra, 52.

The value of the services rendered by Mrs. Nichols to Mrs. Dann in consideration for Mrs. Dann's creation of the trust fund, in so far as those services have not been otherwise compensated, is therefore such an amount as must under the statute be held to be nontaxable. As determined above, that value is $3872. Deducting that amount from the total of the trust fund, $5099.51, leaves $1227.51 of the fund which is taxable.

Judgment may enter sustaining the appeal and decreeing that of the trust fund in question $1227.51 is subject to the state succession and transfer tax and that the balance of said fund is not subject to that tax.