JOHN L. SULLIVAN, TAX COMMISSIONER *v.* FAIRFIELD
COUNTY TRUST COMPANY ET AL., EXECUTORS
(ESTATE OF NANCY S. DAY)

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued June 4—decided June 23, 1969

*Edward J. Turbert,* inheritance tax attorney,
with whom, on the brief, were *Robert K. Killian,* at-

torney general, and *Robert J. Hale,* first assistant tax commissioner, for the appellant (plaintiff).

*Gordon R. Paterson,* with whom was *Richard B. Tweedy,* for the appellees (defendants).

KING, C. J. This appeal involves a claim by the plaintiff, the Tax Commissioner of the state of Connecticut, that a tax is due and owing on an inter vivos trust indenture executed on March 10, 1941, by the decedent, Mrs. Nancy Sayles Day, late of Cornwall, Connecticut, who died on October 23, 1964.

The precise question presented in this appeal is the applicability to the 1941 trust of the so-called "offset provision" of subdivision (f) of § 395e of Cum. Sup. 1939, now appearing, without material change, in § 12-341b of the General Statutes (Rev. to 1964). This offset provision has previously been considered by this court but once, nearly thirty years ago, in the case of *Mossberg* v. *McLaughlin,* 127 Conn. 48, 51, 14 A.2d 733. It also came before the Superior Court once in *Walsh* v. *New Haven Bank,* 15 Conn. Sup. 24. Neither case involved the precise claim made by the plaintiff in the present case, since in each any consideration received by the transferor (settlor) admittedly came from the transferee. The salient facts are uncontroverted and may be rather briefly summarized.

In 1894, the decedent's grandfather, William F. Sayles, died testate, a resident of Rhode Island. By the terms of his will, Frank A. Sayles, who was William's son and Mrs. Day's father, was given a general power to appoint by will William's residuary estate, which had been bequeathed and devised in trust. Frank died March 9, 1920, and his will and

codicils were admitted to probate March 31, 1920, in Providence, Rhode Island.

Frank, in paragraph seventh of his will, exercised the power of appointment by continuing William's trust for a period of twenty-one years after his (Frank's) death, at which time the trust vested in Frank's issue (including the decedent) subject to the payment of income to his widow (the decedent's mother) and other charges against the trust estate.

In paragraph eighth of his will, Frank disposed of his own residuary estate by creating a trust for the benefit of his children, of whom Mrs. Day was one. This trust gave to Frank's children the income from the trust corpus for life, and upon their death the principal went to their issue. Frank further provided in paragraph eighth, as to each of his children, that in order to continue to receive the income from Frank's residuary trust beyond twenty-one years after Frank's death, a child had to execute an irrevocable inter vivos trust indenture similar to the terms of the father's residuary trust and made up of that which then vested in the child from the grandfather's (William's) estate. More specifically, paragraph eighth of Frank's will, in material part, provided: "[A]nd I declare that if any child or children or any such issue of mine who shall take a vested interest in my appointed trust estate [the estate passing from the grandfather's trust], and who shall then be legally competent, shall fail to execute and deliver to the said Trustees such deed of settlement, then the trusts under this Eighth Clause of my will in favor of such child or issue shall thereupon terminate . . . ."

Twenty-one years after the death of her father, the decedent, by inter vivos trust indenture dated March 10, 1941 (which is the transfer in controversy

in this appeal), created an irrevocable trust which specifically recited the terms of paragraph eighth of the will of Frank A. Sayles as the consideration for the trust. Under that trust the decedent retained the income from the corpus for her life and provided that at her death the corpus should go to her issue. If the decedent had not executed the 1941 indenture trust, her income from the residuary trust under her father's will would have terminated absolutely as to her.

The defendants agree that the 1941 trust falls within the provisions of subdivision (d) of § 395e of Cum. Sup. 1939, now appearing, without material change, as subdivision (d) of § 12-341b of the General Statutes (Rev. to 1964), which provides, in relevant part, that a transfer "shall be taxable if made . . . (d) by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor. Such a transfer as last mentioned shall include, among other things, a transfer under which the decedent retained for his life . . . (1) the possession or enjoyment of, or the right to the income from, the property . . . ."

In other words, there is no dispute that the 1941 trust indenture constituted a taxable transfer, and thus the issues are finally reduced to the one basic issue of whether the 1941 trust can avail itself of the offset provision now appearing in § 12-341b and providing, in relevant part, that "[i]f any transfer specified in . . . [subdivision] . . . (d) . . . of this section is made for a valuable consideration, so much thereof as is the equivalent in money value of the money value of the consideration received by the transferor shall not be taxable, but the remaining portion shall be taxable. . . ."

The plaintiff tax commissioner admits that the

decedent received a consideration for the 1941 trust indenture in that she received from her father's estate the income from his trust which she would, under the terms of her father's will, have otherwise lost twenty-one years after his death; and that the amount of that consideration received by the decedent is, and has at all times been, greatly in excess of the value of the decedent's 1941 trust, by any method of computation of either fund.

The plaintiff's basic claim is that the offset provision does not apply in any case unless the consideration comes to the transferor from the transferee; that here the consideration came from the estate of the decedent's father and not from the transferees, that is, Mrs. Day's issue who take the corpus of the 1941 trust; and that therefore the offset provision is inapplicable in this case.

There is nothing in the above-quoted offset provision, or in any other statute, which in express terms makes such a requirement as to the source of the consideration. The expressed requirement is that the consideration be received by the transferor, who in this case was Mrs. Day.

But the tax commissioner claims that there is necessarily implied a requirement that the consideration be received by the transferor "from the transferee" and that if, as was the case here, it did not come from the transferee, the offset provision is not applicable.

In support of this argument the tax commissioner correctly claims that the federal estate tax is a tax upon the transfer of, rather than upon the succession to, property of the decedent, whereas our succession tax levies "a duty or excise upon the beneficiary for the privilege or right of succession to property". *Blodgett* v. *Guaranty Trust Co.,* 114

Conn. 207, 217, 158 A. 245, aff'd, 287 U.S. 509, 53 S. Ct. 244, 77 L. Ed. 463. From this premise the commissioner argues that, since the tax is levied on the transferee, it is necessarily implicit that the consideration which the offset provision requires to come to the transferor must come from the transferee and that by necessary implication this court should write such a requirement into the offset provision as an additional requirement not expressed by the General Assembly in the statute as enacted.

We find no merit in this claim. The quoted offset provision is clear and unambiguous. It requires the consideration to be actually received "by the transferor". It does not prescribe the source of the consideration, although it does require that it be of a character such that it be capable of being valued in terms of money. Indeed, the offset applies to only "so much of the property transferred as to which the grantor [transferor] received equivalent monetary value". *Mossberg* v. *McLaughlin,* 127 Conn. 48, 51, 14 A.2d 733.

We cannot add, to the statutory requirement that the consideration must be received by the transferor, another requirement, unexpressed by the General Assembly, that the consideration must come "from the transferee". For this court to make such an addition would be unconstitutionally to usurp the legislative function. *Adams* v. *Rubinow,* 157 Conn. 150, 153, 251 A.2d 49. The Probate Court, and the Superior Court on appeal, realized that this could not be done and refused to do it.

While the plaintiff tax commissioner does not claim, and in reason could not claim, that there is any justification for asserting that there was anything indicating any attempt at tax avoidance (whether proper or improper) in this particular

case, he does claim that unless there is added to the statute the limiting phrase requiring that the consideration received by the transferor come "from the transferee", the door will be opened wide to tax avoidance in the future. The offset statute had its origin in § 2 (f) of chapter 299 of the Public Acts of 1929 (Rev. 1930, § 1361), some forty years ago. The *Mossberg* case was decided in 1940, nearly thirty years ago. Throughout all this time the language of the offset provision has remained practically unchanged, and the failure of the General Assembly to alter the statute over that long period indicates that the legislature, at least, found no open door for tax avoidance and also that the tax commissioner's fears of such avoidance have little, if any, justification. But even if we shared his fears, we could not judicially amend the statute so as to change the clearly expressed legislative intent. *Rivera* v. *I. S. Spencer's Sons, Inc.*, 154 Conn. 162, 166, 223 A.2d 808. The remedy, if any be needed, must come from the legislature which enacted the statute in the first place.

There is no error.

In this opinion the other judges concurred.