LOW STAMFORD CORPORATION *v.* CITY OF STAMFORD

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 7—decided December 20, 1972

*Douglass A. Strauss,* with whom, on the brief, was *John S. Barton,* for the appellant-appellee (plaintiff).

*Ronald M. Schwartz,* assistant corporation counsel, with whom was *J. Robert Bromley,* corporation counsel, for the appellee-appellant (defendant).

HOUSE, C. J. Both the plaintiff and the defendant in this case have appealed to this court from a judgment of the Court of Common Pleas determining the plaintiff's liability to the defendant for certain property taxes.

The parties have stipulated to the relevant facts. On August 29, 1969, the plaintiff purchased through an intermediary certain real estate located in the city of Stamford from the Low-Heywood School, Inc., a tax-exempt entity. On September 1, 1968, the last assessment date of the city of Stamford prior to the transfer of title, the real estate was exempt from property taxes. The next assessment date was September 1, 1969, three days after the transfer of title. On September 16, 1969, the plaintiff received notice from the city assessor that the property had been assessed on the assessment list of September 1, 1968, at $254,770. This assessment was not prorated from the August 29, 1969 date of transfer of title to the next assessment date of September 1, 1969. On September 17, 1969, the plaintiff received a tax bill of $11,277.61. The amount of the bill was determined by applying the tax rate (52.6 mills) to the full assessment value as of September 1, 1968, and then prorating the total tax for the period from August 29, 1969, to June 30, 1970, which was the end of the city's fiscal year. The plaintiff duly appealed to the Stamford board of tax review for a reduction of the assessment and the tax based thereon but the board of tax review decided that no reduction in the assessed value of the property or taxes on the assessment list of September 1, 1968, would be allowed. From that decision the plaintiff appealed to the Court of Common Pleas.

The trial court sustained the plaintiff's appeal and adjudged that the tax due on the list of Septem-

ber 1, 1968, "is in a principal amount equal to the sum of the full mill rate applied for the prorated assessment period from August 29, 1969, to September 1, 1969, in addition to the second instalment of tax on the list of September 1, 1968 which became due and payable on January 1, 1970." From this judgment both parties have appealed.

A brief recital of the taxing procedure followed in Stamford is necessary to an understanding of the court's judgment and the claims of the parties. September 1 is the assessment date in Stamford and the assessment list is annually compiled as of that date. After an appropriate mill rate has been fixed, the taxes on that list are payable in two instalments, the first on July 1 of the following year and the second on January 1 of the second following year. Hence, a taxpayer who continuously owned taxable property from 1968 to 1970 would receive an assessment notice informing him of his assessment on the grand list as of September 1, 1968. He would pay one-half of his tax on this 1968 assessment on July 1, 1969, and the remaining half on January 1, 1970. Before his tax on the 1968 assessment was fully paid, he would have received notice of his September 1, 1969, assessment, the taxes on which would be payable July 1, 1970, and January 1, 1971. It is this time lag together with the change in classification of the property from a tax-exempt to a nonexempt status which has given rise to the present controversy.

Several well-established general principles of the law of taxation are applicable in this case. The incidents of taxation should fall, as far as possible, equally on all similarly situated. *First Federal Savings & Loan Assn.* v. *Connelly,* 142 Conn. 483, 491, 115 A.2d 455, appeal dismissed, 350 U.S. 927, 76

S. Ct. 305, 100 L. Ed. 811. " 'Municipalities have no powers of taxation except those expressly given to them by the legislature. . . . Their powers of taxation can be lawfully exercised only in strict conformity to the terms by which they were given. . . . When a taxing statute is being considered, ambiguities are resolved in favor of the taxpayer. . . .' *Security Mills, Inc.* v. *Norwich,* 145 Conn. 375, 377, 143 A.2d 451." *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 36–37, 238 A.2d 410; see generally, *Kellems* v. *Brown,* 163 Conn. 478, 487–93, 313 A.2d 53. The provisions of a taxing statute, like any other statute, "should be considered as a whole, so that they may be reconciled if possible"; *Obuchowski* v. *Dental Commission,* 149 Conn. 257, 266, 178 A.2d 537; and, in the absence of special circumstances, the words of a statute are to be accorded their common meaning. General Statutes § 1-1; *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 474, 217 A.2d 698.

The provisions of § 12-81a of the General Statutes govern municipal taxation of property which prior to the purchase was tax exempt. The statute imposes tax liability on the purchaser of such property prorated "for the tax year in which the transfer took place."[1] Of primary importance is a determination

---

[1] General Statutes § 12-81a, entitled "LIABILITY OF PURCHASER OF TAX-EXEMPT PROPERTY," reads, in part, as follows: "(a) The purchaser . . . of any property which, prior to such sale, was tax exempt shall be liable for the payment of municipal taxes on such property from the date on which the conveyance is placed on the land records of the town in which such property is situated . . . including *a prorated share of taxes for the tax year in which the transfer took place.* Such liability shall attach to the property as a charge thereon." (Emphasis supplied.)

Subsection (b) requires that the purchaser both record the deed and give notice to the assessor of the purchase within ten days of delivery of the deed.

Subsection (c) provides: "Notwithstanding other provisions of

of the meaning of the words "tax year" as used in this statute. The defendant has assigned as error the conclusion of the trial court that "tax year" as used in the statute refers to the assessment year rather than to the city's fiscal year, but we find no error in this conclusion of the trial court.

As we have noted, § 12-81a (a) provides that a purchaser shall be liable for taxes from the date of the conveyance, "including a pro-rated share of taxes for the tax year in which the transfer took place." Sections 12-81a (c) through (e) provide that after the assessor has received notice of the transfer, he shall add the property to the grand list "at its normal full assessment value, pro-rated from the date of transfer to the next assessment date" and notify the tax collector, who is to present to the taxpayer a bill "based upon an amount pro-rated by the assessor." While the statute does not include an express definition of "tax year," the inescapable conclusion is that the statute is concerned for purposes of proration only with assessments. The billing procedure follows on the proration of the assessment by the assessor.

Furthermore, it is clear from the city's taxing procedure that the "tax year" logically must refer

this chapter, not later than fifteen days after receipt by the assessor of such notice of purchase, the assessor shall add such property to the taxable grand list of the town in the name of the purchaser at its normal full assessment value, *pro-rated from the date of transfer to the next assessment date,* and shall not later than five days thereafter notify the purchaser and the tax collector of the town of the assessment so placed upon the property." (Emphasis supplied.)

Subsection (e) provides: "Upon receipt of such notice from the assessor, the tax collector of the town shall, if such notice is received after the normal billing date, within ten days thereafter mail or hand a bill to the purchaser *based upon an amount pro-rated by the assessor.* Such tax shall be due and payable and collectible as other municipal taxes and subject to the same liens and processes of collection." (Emphasis supplied.)

to the "assessment year." The grand list is compiled with reference to September 1 of each year. Bills payable at two later dates are compiled with reference to that assessment. The billing dates themselves are irrelevant to the determination of what is taxed and at what rate. A tax bill payable on July 1, 1969, for example, bears no direct relationship to who owns the property on that date; rather, it relates back to title and value as of September 1, 1968. The defendant's contention that "tax year" in § 12-81a means "town's fiscal year" cannot be sustained.

A simple determination of the method which should have been used in the compilation of the plaintiff's tax pursuant to the provisions of § 12-81a disposes of the principal assignments of error of both parties. The assessed value of the property as of September 1, 1968, should be prorated from August 29, 1969, to September 1, 1969. The resulting amount which the court found to be $110.14 was payable by the plaintiff in two equal instalments, one "due" on July 1, 1969, and one on January 1, 1970. Since the first due date occurred before the transaction took place, the tax collector had the duty, under § 12-81a (e), to bill the plaintiff for this instalment in September, 1969. The second instalment was payable on January 1, 1970. The payment of $110.14, the amount found by the trial court to be the total tax for the prorated 1968 assessment, fully satisfied the liability of the plaintiff for its prorated taxes covering the three days for which it was liable for taxes on the September 1, 1968, grand list and it is entitled to a refund with interest of the sum paid in excess of that amount for taxes based on that grand list. Since the plaintiff owned the property on September 1, 1969, the assessment

date for that year, it is, of course, liable for the full amount of taxes based on that grand list and those taxes are not involved in the present appeals.

In reaching our conclusion, we have not overlooked the court's reliance on the provisions of § 12-70 of the General Statutes.[2] The record discloses that after the parties had been heard and had submitted their briefs and the court was preparing its decision it took the unusual step of telephoning the plaintiff's counsel and requesting that he submit for the court's examination a copy of the deed from Low-Heywood School, Inc., to the plaintiff's predecessor in the chain of title. The deed was submitted to the court which, without affording counsel any opportunity to be heard on its admissibility as evidence or its effect, certified it as a "Court Exhibit" and in part predicated its judgment on the application of the provisions of § 12-70 to the portion of the deed which stated that the premises were "subject to the taxes of the City of Stamford on the list of September 1, 1968 and taxes of said City of Stamford on the list of September 1, 1969, which taxes the grantee assumes and agrees to pay as part of the consideration hereof." The plaintiff properly assigned as error this unorthodox procedure on the part of the court and its consideration of the contents of the deed without affording counsel an opportunity to object to its admissibility in evidence and to argue its legal effect. The patent error of this procedure was, however, harmless. The overriding error of the court was in its conclusion as to

---

[2] "[General Statutes] Sec. 12-70. OBLIGATION OF PURCHASER OF REAL ESTATE ASSUMING PAYMENT OF TAXES. When any person, at the time he acquires equity in real estate, expressly assumes the payment of taxes which are to become payable thereafter, he shall become liable for the payment thereof to the same extent and in the same manner as though such real estate were assessed in his name."

the effect of the application of the provisions of § 12-70 of the General Statutes. By statute, all taxes "properly assessed" become a debt due from the person against whom they are assessed. General Statutes § 12-161. " 'The party against whom a tax is assessed is directly liable for the tax and his duty [to pay it] is clear.' *Middletown Savings Bank* v. *Bacharach,* 46 Conn. 513, 524." *Ives* v. *Addison,* 155 Conn. 335, 340, 232 A.2d 311. In *State ex rel. Pettigrew* v. *Thompson,* 135 Conn. 228, 234, 63 A.2d 154, this court discussed the legislative history of what is now § 12-70 and concluded: "We have no doubt that the primary purpose of the bill was that stated on it, to impose upon one who assumed taxes on the purchase of property a direct obligation to pay them, and so to enable the person making the payment to deduct it from his gross income in determining the amount of his federal income tax." Further, the court noted (p. 235) that the language of the statute "can reasonably be interpreted to mean only that the purchaser becomes obligated to pay the taxes which the vendor, by reason of his ownership of property on the assessment date, had become bound to pay. . . . [p. 236] Evidently . . . [the legislature's] thought was that the purchaser was to step into the shoes of the vendor against whom the tax was assessed and to be liable to the same extent and in the same manner that he was." In the present case, so long as the vendor school owned the property it was exempt from municipal taxation so that in fact until the school conveyed the property no tax liability existed to which the words of the deed and the provisions of § 12-70 could be applied. The property became subject to taxation by the city only on the transfer of title and at that time the provisions of § 12-81a of the General Stat-

utes became applicable. As the title of that section indicates, it expressly governs the "[l]iability of purchaser of tax-exempt property."

We conclude that under the prorating provisions of § 12-81a the extent of the plaintiff's tax liability for taxes on the list of September 1, 1968, was $110.14 and that the trial court was in error in finding an additional tax liability in the amount of $6700.45, which finding it predicated on the provisions of § 12-70 and the provisions of a deed not in evidence.

There is error in part, the judgment is set aside and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion the other judges concurred.