JOHN BURWELL ET AL. *v.* BOARD OF SELECTMEN
OF THE TOWN OF WINCHESTER, ET AL.

LOISELLE, BOGDANSKI, LONGO, PETERS and SIDOR, Js.

Argued March 8—decision released July 31, 1979

*Wesley W. Horton,* with whom was *Perley H. Grimes, Jr.,* for the appellants (plaintiffs).

*George C. Hastings,* with whom was *Samuel Bailey, Jr.,* for the appellees (defendants).

LONGO, J.   The plaintiffs brought this action in the Superior Court seeking a temporary and permanent injunction, and a declaratory judgment, to determine whether a tax laid by the defendant board

of selectmen of the town of Winchester was authorized in light of a specific provision in the town charter requiring apportionment of certain tax expenses between the town and the city of Winsted, a tax district established within the town of Winchester. After a trial to the court, a prior temporary injunction issued by the court was made permanent restraining the defendants from issuing tax bills until street lighting, sewer, curbs, sidewalks, and crosswalks expenses were apportioned solely to the city of Winsted. The court did not, however, render an injunction mandating apportionment between town and city with respect to the tax burden of police and fire expenses. From the judgment rendered, the plaintiffs have appealed to this court.

## I

We are met at the outset by a precise, well-defined attack upon the finding of the trial court. The plaintiffs argue that the court erred in finding certain facts without evidence and erred in failing to include certain paragraphs of the plaintiffs' draft finding alleged to have been admitted or undisputed.[1] As to the court's finding concerning the availability of fire protection in the outlying town of Winchester, the discrepancy between the supporting testimony and the finding is minor; the finding thus stands. With respect to the remaining paragraphs alleged to be found without evidence, the validity of the plaintiffs' claims is tested by the evidence printed

[1] We note that the plaintiffs' attack on the trial court's finding challenges neither the testimony concerning the history of the town's charter, nor the majority of testimony elicited concerning the immediate past history of Winchester and Winsted, nor the testimony evidencing the town police chief's seventeen years of experience in providing police services to town and city alike, nor the testimony relating to the past apportionment of taxes.

in the appendices to the briefs. *Jennings* v. *Reale Construction Co.*, 175 Conn. 16, 17, 392 A.2d 962 (1978). A review of the appendices discloses that, although certain paragraphs of the finding rest upon disputed evidence, the court was warranted in finding the facts challenged, and drawing reasonable inferences from the testimony elicited at trial. The facts found, having reasonably been reached, must be accepted. *Klepp Wood Flooring Corporation* v. *Butterfield,* 176 Conn. 528, 531–32, 409 A.2d 1017 (1979); *National Broadcasting Co.* v. *Rose,* 153 Conn. 219, 223, 215 A.2d 123 (1965).

As to the facts claimed to be improperly deleted from the finding, which are alleged to be admitted or undisputed, the plaintiffs, in order to secure an addition must point to some part of the appendix, the pleadings or an exhibit properly before the court which discloses that the defendants admitted that the fact in question was true or that its truth was conceded to be undisputed. Practice Book, 1978, § 3039;[2] *Malarney* v. *Peterson,* 159 Conn. 342, 344, 269 A.2d 274 (1970); *Martin* v. *Kavanewsky,* 157 Conn. 514, 515, 255 A.2d 619 (1969). We have examined the plaintiffs' draft finding: most of the paragraphs sought to be added are, in fact, disputed, contradicted by the defendants' evidence, or immaterial to the disposition of this appeal; the finding, to this extent, does not warrant correction. *Walsh* v. *Turlick,* 164 Conn. 75, 77, 316 A.2d 759 (1972); *Barnini* v. *Sun Oil Co.,* 161 Conn. 59, 61, 283 A.2d 217 (1971). One paragraph of the plaintiffs' draft finding—that police and fire protection was always available in the same fashion to residents outside of the Winsted city limits for the nine

---

[2] Practice Book, 1978, § 3039 was repealed as of July 1, 1979. See §§ 3060W and 3166.

years previous to this dispute when a mill rate differential was in existence—is admitted and supported by evidence printed in the appendices, and is thus added to the finding. *Stoner* v. *Stoner,* 163 Conn. 345, 347, 307 A.2d 146 (1972); Maltbie, Conn. App. Proc. § 158.

The finding, with modification as warranted, discloses the following: The town of Winchester is a municipal corporation, incorporated in 1771, with approximately 11,200 residents, 9000 of whom reside in the city of Winsted. After having been established in 1858 as a borough, 3.5 square miles in area, the city, in 1915, was established as a tax district having territorial limits coextensive with the borough within the town. Section 3 of article I of the town's charter provides as follows: "Section 3. Whenever, at any town meeting duly warned, for the purpose of laying taxes, a tax shall be laid upon the inhabitants and taxable property within said town, such tax shall be apportioned by the board of selectmen hereinafter mentioned in such manner that all inhabitants and taxable property within said town shall bear the general expenses of said town, *and the inhabitants and taxable property within said city of Winsted only shall bear the expense of installing, enlarging, maintaining, and caring for any sewer system that may be established in said city, the expense of the police and fire departments within said city, the lighting of the streets and public places in said city, the establishment, maintenance and repair of sidewalks, curbs, and crosswalks in said city.*" (Emphasis added.) The present controversy arose out of the defendant board's interpretation and implementation of this charter provision. For at least thirty-two years prior to fiscal 1976 there had been, pursuant to this

section, a differential between the tax mill rate for property in the city, which alone bore the expenses of sewers, streets, police and fire protection, etc., and the mill rate for property in the outlying town.[3] In preparing the budget for fiscal 1976, however, the defendant board, after initially deciding to revise the ratio for police and fire expenses from a 55:45 to an 80:20 apportionment between city and town respectively, voted to depart from its prior course of apportionment with respect to the expense of the items enumerated in article I, § 3 of the charter, and, on May 3, 1976, levied a uniform mill rate, with the above expenses to be borne by all of the tax-payers of the town and city alike.

The plaintiffs, residents and taxpayers of the town of Winchester, sought to enjoin the defendants from imposing the uniform mill rate, arguing that the charter language unambiguously mandated that a tax differential be maintained between the town and city on the five specific items mentioned therein—sewers, street lighting, sidewalks, curbs and cross-walks, and police and fire department expenses. As to all of the categories except the expenses of the police and fire departments, the trial court perma-nently enjoined the defendants from imposing a

---

[3] In the past the mill rates for the outlying town and the city were determined in the following manner: The total of the amounts attributed to the city for police, fire, sewer and lighting were divided by the grand list for the city to give the premium for city property. The total for the city was then subtracted from the total town budget and that amount was divided by the grand list for the entire town. The property owners in the outlying town paid taxes at the latter rate and the city property owners paid that rate plus the city premium. Prior to the 1976-1977 budget, the apportionment of the expenses of the police and fire departments was based upon a rough formula under which approximately forty-five percent of the expenses were apportioned to the town and approximately fifty-five percent were apportioned to the city.

uniform tax mill rate.[4] The court, however, reasoned that police and fire protection was provided to all inhabitants of the town and city without discrimination, and concluded that, although in the past there had been a historical basis for allocating police and fire expenses solely to the city, there was at present neither a factual basis nor a statistical or accounting basis for apportioning the expenses of the police and fire departments between the town and city on a 45:55 basis. See note 3, supra. The court determined, based on the testimony of Cyril Hamilton, an elderly citizen of the town, that sweeping technological changes relating to the availability of police and fire protection had developed to such an extent that all inhabitants of the city and town at the time of trial shared equally the benefits of those services. It concluded, therefore, that the expenses of the police and fire departments had become "general expenses" under article I, § 3 of the charter, and, as such, had to be borne by all inhabitants and taxable property within the town.

In the opinion of the court, the charter, despite its unambiguous direction to the contrary, did not mandate the apportionment of police and fire expenses. From the judgment, which did not enjoin the imposition of a uniform mill rate with respect to police and fire expenses, the plaintiffs have appealed to this court. The plaintiffs have pursued two central claims of error on this appeal. In the view we take of the case, however, only one need be addressed: whether the court erred in concluding that article I, § 3 of the town charter did not require

---

[4] The trial court accordingly ordered a revision of the tax levy and corresponding mill rate to reflect an apportionment of expenses for street lighting, sewers, curbs, sidewalks and crosswalks. This portion of the judgment below is in no way challenged on this appeal.

that police and fire expenses be apportioned so that inhabitants and property within the city of Winsted only bear the costs of police and fire department services performed within the city.[5]

## II

The crux of the plaintiffs' appeal lies in their contention that the court erred in holding that the charter provision, article I, § 3, did not require the maintenance of an apportioned tax differential between the city and town in regard to expenses for the services of the police and fire departments.[6] The

[5] The plaintiffs have initially argued that the court erred in permitting Cyril Hamilton, an elderly resident of the town, to testify for the defendants concerning conditions in the town in 1915, the year in which article I, § 3 of the town charter was first adopted, and upon the availability of police and fire services in the town and city at that time. Hamilton's testimony basically indicated that police and fire services were, because of their limited development in 1915, available primarily in the inner city, and apparently was relied upon by the court in reaching the conclusion that changed times permitted a change in the tax scheme in the town. While we do not agree with the plaintiffs that Hamilton's testimony was inadmissible, as it was elicited not for purposes of the construction of the language of the charter but merely to aid in understanding the circumstances extant at the time of the charter's enactment; see, e.g., *Penfield* v. *Jarvis*, 175 Conn. 463, 466, 399 A.2d 1280 (1978); *Jacques* v. *H. O. Penn Machinery Co.*, 166 Conn. 352, 359 n.3, 349 A.2d 847 (1974); *Gary Excavating Co.* v. *North Haven*, 163 Conn. 428, 432, 311 A.2d 90 (1972); *Hartford Electric Light Co.* v. *Water Resources Commission*, 162 Conn. 89, 97, 291 A.2d 721 (1971); further discussion of this issue is, in view of our holding, unnecessary to the decision of this appeal.

[6] Because of the importance attached to two points in the defendants' brief, we must note what is not at issue in this appeal. Contrary to the apparent beliefs of the defendants, this is not a home rule case. General Statutes §§ 7-187–7-201. No issue concerning the legislative authority to enact the charter provision in question is present. Compare *Caulfield* v. *Noble*, 178 Conn. 81, 420 A.2d 1160 (1979), with *Rothkopf* v. *Danbury*, 156 Conn. 347, 242 A.2d 771 (1968), and *State ex rel. Barnard* v. *Ambrogio*, 162 Conn. 491, 294 A.2d 529 (1972). This is not a case where the town's enactment of a home rule charter in 1960 created any new, unauthorized tax

basis of the trial court's decision was multi-faceted, bringing to bear upon the express language of the charter historical data concerning the town and its charter, the characteristics, including budgetary considerations, of past and present police and fire services in the town and the experience of past tax apportionment between the town and city. Proceeding from this foundation, the court found that past apportionment of tax expenses for police and fire services between city and town lacked a factual basis; the initially proposed 80:20 expense apportionment was merely the result of an educated guess by the town manager; and although, at the time of the adoption of the charter in 1915, the primitive means of communication and transportation limited the effective services of the police and fire departments to the city, those services were now generally available to all. The court then concluded that on account of the sweeping modernization of these services, the expenses of the police and fire departments had become "general expenses" of the town, which, in accordance with the charter, were required to be borne by all of the inhabitants and taxable property in the town, and that the defendants were thus justified in imposing a nondiscriminating uniform tax mill rate for the city and town. Implicit

---

district resulting in excessive or disproportionate taxation. See *Pepin v. Danbury,* 171 Conn. 74, 368 A.2d 88 (1976). Neither is this a case presenting a viable attack upon the constitutionality of article I, § 3 of the town charter. Although we are, of course, free to determine the constitutionality of legislation when the issue is properly presented, we have no occasion presently to do so. The question of the constitutionality of article I, § 3 was raised only by an intervening third party in the trial court. The court, however, entered judgment for lack of jurisdiction in favor of the original parties plaintiff and defendant and against the intervening party. No appeal was taken from that portion of the judgment. There is, therefore, no constitutional issue remaining for decision.

in the court's reasoning, moreover, is a judgment that the charter provision in issue appeared to make sense only so long as the inhabitants of the city received special benefits from police and fire protection not available to residents in the outlying town. For a number of discrete reasons, we cannot agree with the judgment of the trial court.

The authority of the town to tax is absolutely defined by the grant of taxing power from the legislature, and is limited to expressly granted powers or those that exist by necessary implication. *Pepin* v. *Danbury,* 171 Conn. 74, 82–83, 368 A.2d 88 (1976); see 14 McQuillin, Municipal Corporations (3d Ed.) § 38.06. The General Assembly may further define that power by the legislative grant of a town charter; see *Caulfield* v. *Noble,* 178 Conn. 81, 88, 420 A.2d 1160 (1979); *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 198–99, 132 A. 561 (1926); the town, however, may levy authorized taxes only in strict conformity with the terms of that charter. *Low Stamford Corporation* v. *Stamford,* 164 Conn. 178, 182, 319 A.2d 369 (1972); *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 36, 238 A.2d 410 (1968). The charter, by its terms, mandates that a tax "shall be apportioned" and that the inhabitants of Winsted only "shall" bear the expenses of police and fire services in that city. The use of the word "shall" in this context means that the duty to apportion taxes in the manner described in the charter is mandatory and not permissive. *Morris* v. *Timenterial, Inc.,* 168 Conn. 41, 43, 357 A.2d 507 (1975); *Hyatt* v. *Zoning Board of Appeals,* 163 Conn. 379, 387, 311 A.2d 77 (1972); *Akin* v. *Norwalk,* 163 Conn. 68, 74, 301 A.2d 258 (1972). Thus, construing the unambiguous

words of the charter itself, the maintenance of a differentiated tax mill rate between the town and city appears to be compulsory. We will not read into the charter a term at odds with the plain language employed. *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 507, 363 A.2d 1055 (1975); *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975).

Furthermore, as we initially indicated, the town has imposed a differentiated mill rate for thirty-two years prior to fiscal 1976, despite the fact that police and fire protection was always available in the same fashion outside of the city limits for at least the nine years previous to fiscal 1976. This prior interpretation, placed upon the terms of the charter by the town for a lengthy period of time, is to be accorded considerable deference. *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 326, 307 A.2d 155 (1972) (*Loiselle, J.,* concurring), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); *Downer* v. *Liquor Control Commission,* 134 Conn. 555, 561, 59 A.2d 290 (1948). We have, moreover, held that the consistent application of a statute over a long period of time, without alteration, is indicative of the purpose that its drafters sought to advance. *Sullivan* v. *Fairfield County Trust Co.,* 158 Conn. 325, 331, 260 A.2d 568 (1969). In the present case, even if we were to agree with the claims of the defendants concerning the difficulty inhering in the apportionment of the tax expenses for police and fire protection, we could not, in view of the charter's plain mandate, judicially amend the charter so as to alter the clearly expressed intent of its drafters. *Dental Commission* v. *Tru-Fit Plastics, Inc.,* 159 Conn. 362, 365, 269 A.2d 265 (1970); *Sul-*

*livan* v. *Fairfield County Trust Co.,* supra, 331; *Rivera* v. *I. S. Spencer's Sons, Inc.,* 154 Conn. 162, 166, 223 A.2d 808 (1966).

The trial court found that conditions with respect to the availability of fire and police services had changed since the adoption of the charter and that the defendants were accordingly entitled to depart from the apportionment requirement of the charter. Any change, however, must come from the inhabitants of the town and city who adopted the charter. "Although policy considerations may since have changed, and . . . [the charter] provisions may be less desirable to our present society, this court is precluded from substituting its own ideas of what might be a wise provision in place of a clear expression of legislative will." *Penfield* v. *Jarvis,* 175 Conn. 463, 474–75, 399 A.2d 1280 (1978) ; *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 415, 311 A.2d 65 (1972) ; *Dental Commission* v. *Tru-Fit Plastics, Inc.,* supra, 365. We cannot invalidate article I, § 3 of the charter simply because it embodies a taxation policy which the defendants claim is obsolete. If the charter is to be altered, the town, not this court, must be the forum for any amendment or revision.

The fact, moreover, that apportionment of the tax burden of police and fire expenses may, as the defendants claim, be difficult to accomplish is not a sufficient reason for the board of selectmen to depart from the directive of article I, § 3 of the charter. As the language of the charter plainly and adequately expresses the intention of its drafters, it must be given effect, and the fact that the charter may be difficult in administration does not justify placing alternative constructions upon it. *Mason* v.

*Cutkomp,* 15 Ill. App. 2d 378, 381, 146 N.E.2d 382 (1957) ; *Legal Rate Loan Co.* v. *Bouanchaud,* 148 So. 101, 103 (La. App. 1933); see 82 C.J.S., Statutes § 326; cf. *United Aircraft Corporation* v. *International Assn. of Machinists,* 169 Conn. 473, 488, 363 A.2d 1068 (1975), cert. denied, 425 U.S. 973, 96 S. Ct. 2172, 48 L. Ed. 2d 797 (1976).

In sum, we hold that, in accordance with article I, § 3 of the town charter, all police and fire expenses must be apportioned so that inhabitants and taxable property within the city of Winsted only bear the costs of such services performed within the city, and that the trial court erred in refusing to enjoin the defendant board of selectmen from imposing a uniform mill rate with respect to police and fire expenses.

There is error, the judgment is set aside and the case is remanded with direction that judgment be rendered as on file, except as modified in accordance with this opinion.

In this opinion the other judges concurred.