[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by four plaintiffs, Johnna L. Howard, Gabriel and Elizabeth Wawrzynowicz and Nancy Santacroce, from the action of the defendant, Commission on the City Plan of the City of Norwich, in approving a site development plan (SDT) for construction of a building and related improvements on property in the City of Norwich.
For reasons hereinafter stated the allegations of the complaint have not been proven and the action appealed from is affirmed.
From the pleadings, it is found that defendant Commission is authorized under the General Statutes, The Code of Ordinances of the City of Norwich and the Charter and Related Laws of the City of Norwich to act upon applications of the type that are the subject of this appeal.
The action has been brought against both defendant Commission and SMM Associates (SMM) the applicant for and recipient of the SDP approval.
Before considering the merits of the appeal, the issue of aggrievement must be resolved.
Pleading and proof of aggrievement are essential to establish subject matter jurisdiction over an administrative CT Page 1850 appeal such as the case at bar. Hughes v. Town Planning and Zoning Commission, 156 Conn. 505, 507 (1968). Hartford Distributors Inc. v. Liquor Control Commission, 177 Conn. 616,622 (1979).
Aggrievement is the only issue in every administrative appeal on which the court must allow evidence. Kyser v. Zoning Board of Appeals, 155 Conn. 236, 247 (1967). The plaintiffs have the burden of proof on aggrievement. London v. Planning and Zoning Commission, 149 Conn. 282, 284
(1962); Whitney Theater Co. v. Zoning Board of Appeals,150 Conn. 285, 287 (1963).
The aggrievement issue must be resolved before the appeal can be considered on its merits. At least one plaintiff must establish aggrievement for the court to have subject matter jurisdiction over the appeal. Norwicki v. Planning and Zoning Board, 148 Conn. 492, 495 (1961).
Appeals from the decision of commissions, such as defendant commission here, may be taken by aggrieved persons under the provisions of General Statutes 8-8, 8-9 and 8-10. Section 8-8(1) defines the term "aggrieved person." The statute includes the following definition of the term, "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
Paragraphs 4 and 5 of the complaint address the issue of aggrievement. Paragraph 4 alleges statutory aggrievement, as above stated, and claims that plaintiffs own property that abuts and is within a radius of one hundred feet from the site which is the subject matter of the appeal. Nick v. Planning and Zoning Commission, 6 Conn. App. 110-111 N.3 (1986).
Paragraph 5 alleges facts which might be found to constitute classical aggrievement.
At trial plaintiffs introduced evidence of statutory aggrievement only. No attempt was made to prove classical aggrievement as alleged in paragraph 5.
From such evidence it is found that the land involved in the decision appealed from is as shown on a CT Page 1851 series of maps or plans included with item No. 1 returned to court by defendant commission as a part of the record. One of such maps, entitled "Site Plan," contains a marginal note indicating that the land owner was Joseph Goldberg, et al. Plaintiff introduced into evidence certified copies of two instruments recorded in the Norwich Land Records describing two separate tracks. It is found that the two tracks constitute the land involved in the decision owned by Joseph Goldberg and Andrew Brand.
Plaintiffs introduced the testimony of an expert witness, a title examiner. Through this witness certified copies of conveyances to plaintiffs, Elizabeth Wawrzynowicz, Gabriel A. Wawrzynowicz, Johnna L. Howard and Nancy Santacroce were introduced into evidence.
The expert witness testified that in preparation for her testimony she reviewed the tax assessor's maps and a map dated 1900. Based upon her research and the deeds in evidence she testified that the property of all four plaintiffs abutted the permit property.
Based upon such testimony and a review of the evidence it is found that the property described in each of the several plaintiffs' deeds does, in fact, abut the property which is the subject of this appeal.
The expert witness testified that she ran down the title to each plaintiffs' property from the date of the deed to the day before trial, and that there had been no conveyance out of any plaintiff since they received title under the deeds in evidence.
It then must be found that plaintiffs were owners of the property abutting the permit land at the time this appeal was taken. Foran v. Zoning Board of Appeals,158 Conn. 331, 336 (1969). It could be inferred that they maintained such ownership to the time of trial.
Defendants have pointed out that in researching the land records the examiner did not determine whether or not the plaintiffs held a good marketable title. Aggrievement, however, does not require title to be in fee simple absolute.
The statute refers to a person "owning land." This CT Page 1852 is not the most precise term which the legislature could have chosen.
The term "owner" is frequently used in our statute and has no commonly approved usage or fixed meaning. The term must be interpreted in content according to the circumstances in which it is used. Smith v. Planning and Zoning Board, 3 Conn. App. 550, 553 (1985).
All of the plaintiffs received title to their abutting properties by way of deeds of conveyance and it could be found that they at least received an equitable interest in the land.
There are a number of cases in which less than total ownership has been found sufficient to support a finding of aggrievement. For example, one who has contracted to purchase property has standing to apply for a special exception or a variance governing its use and to prosecute a zoning appeal resulting from such application. Shulman v. Zoning Board of Appeals, 154 Conn. 426, 431 (1967). See also Loew v. Falsey, 144 Conn. 67, 74 (1956) a mandamus action but on point. See also Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146-47 (1976) involving a leasehold interest. See also Smith v. Planning and Zoning Board, 3 Conn. App. 550.
It must then be found that plaintiffs are abutting owners and that their ownership is sufficient to give them the status of aggrieved persons with standing to prosecute this appeal. Nick v. Planning and Zoning, supra.
The real property involved here is about ten acres in area and is located in a General Commercial (GC) Zone. Defendant, SMM, filed a site plan review application with defendant commission proposing the construction of a supermarket of 64,872 square feet, and an additional rental store of 5,600 square feet. Plaintiffs claim that the SDP as submitted does not conform to the applicable regulations, and, that in approving the SDP defendant commission acted illegally, arbitrarily and in abuse of its discretion.
In approving the SDP defendant commission acted in an administrative capacity. McCrann v. Town Planning and Zoning Commission, 161 Conn. 65 (1971). Defendant commission CT Page 1853 has less discretion in performing its administrative functions than when it acts in a legislative capacity. When performing administrative functions it acts basically to determine whether the application submitted conforms to the existing regulations. Kosinski v. Lawlor, 177 Conn. 420, 427
(1979). Where there is conflicting evidence before the commission it can resolve debatable questions of fact. If defendant commission's decision on such issues is reasonably supported by the record, the court cannot substitute its judgment for that of the commission. Westport v. Norwalk,167 Conn. 155, 161 (1974). When reviewing the action of the commission to determine if its findings complied with the standards set out in the regulations the court is not compelled to indulge in a microscopic search for technical infirmities. Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. 350, 357 (1967).
In their complaint and in their briefs plaintiffs have alleged certain specific instances where it is claimed defendant commission acted illegally and arbitrarily in violation of the applicable regulations. Each of these claims will have to be addressed by the court.
The SDP contains a layout of the proposed parking lot. Although the SDP was approved by defendant commission, plaintiffs claim that it does not conform to the applicable regulations. Specific claims are as follows:
a. Plaintiffs allege that the regulations require that the standard width for travel lanes in commercial parking lots be twenty-six feet where, as in the SDP, right angle parking is used. The SDP, however, only provides for a travel lane of twenty-four feet.
Off-street parking requirements applicable to the SDP are contained in chapter 15 of the Regulations. The text of the regulations set forth certain general and specific rules governing commercial parking lots. Nowhere in the text is there a provision requiring a twenty-six (26) foot travel lane. At the end of the chapter is a fold-out sheet entitled "Typical Parking Lot Standards." This sheet contains diagrams of various parking lot lay-outs. One of these shows a lay-out of "Ninety Degree Right Angle Parking." The lane between the two parking areas is shown as twenty-six (26) feet. This is the basis of plaintiffs' claim that the CT Page 1854 regulations require a minimum of twenty-six feet travel lanes.
It cannot be found, however, that the regulations mandate a minimum travel lane between rows of parking spaces. Chapter 15 provides numerous examples where specific dimensions are required. For example, 15.4 sets forth the dimensions of a parking space and 15.5 the dimensions of a loading berth. If the regulations were intended to mandate a specific width for travel lanes they would have been written in the same definite way. Instead the travel width is shown on a drawing using a designation "typical." This would indicate that the regulations were written to provide a degree a flexibility to cover the various situations. In this connection see the general provisions of 15.12 and 15.12.1 which, together with the fold-out sheet, provide adequate guidance for the commission and the public. The testimony of Planning Director Warzecha at the public hearing indicates that defendant commission has so interpreted the regulations in the past.
It has not been established that the approval of the twenty-four foot lane was an abuse of discretion.
b. Section 15.13 provides that parking lots in commercial districts shall have at least eighteen square feet of green space seeded to grass and planted with trees and shrubs, within the parking lot for each parking space. In parking lots of more than fifty spaces, such as in the SDP, a landscaped divider strip at least six feet wide planted to trees and evergreen shrubs shall be provided not more than one hundred and fifty feet on center. Plaintiffs claim that this regulation has not been complied with in three areas of the plan.
In approving the SDP defendant commission included certain modifications. Modification #4 provides:
 "Landscaping within the parking lot shall be provided pursuant to section 15.13 of the Zoning Regulations."
This modification would bring the SDP into compliance with 15.13. CT Page 1855
It is within the discretion of defendant commission to approve the SDP with the modification. General Statutes8-3(g); TLC Development, Inc. v. Planning and Zoning Commission, 215 Conn. 527, 533 (1990).
c. Plaintiffs also contend that the developers will be unable to comply with the provisions of 15.13 without reducing the number of parking spaces below the number required. This claim is premature and speculative. It cannot be assumed that defendant commission will fail to require compliance with its decision.
d. Plaintiffs allege that the approved SDP violates the provisions of 3.15 of the Regulations which require a planted fifty (50) foot buffer strip.
Section 3.15 of the Zoning Regulations provides in pertinent part:
 Where any lot or part thereof in a commercial district adjoins or abuts on a street opposite a residential district a landscaped buffer strip fifty (50) feet wide shall extend the length of such district boundary or street.
Section 3.15 contains specific requirements as to how the strip should be planted and provides that a reduction of twenty (20) feet may be authorized as stated in the regulation.
Although plaintiffs have raised this claim that the property abuts a residential zone, they fail to point out how this can be determined from the items returned to court. The large maps showing "Site Plan" and other projections of the SDP, including the "Landscape and Lighting Plan" do not show zoning boundaries. The "Location Map" shown as an insert on the Site Plan does purport to show zoning districts but, it cannot be determined with any degree of certitude where the zone boundary is in relation to the SDP. Also, the zoning map returned as a part of the zoning regulations shows the zone boundaries but it does not show property lines. Comparing these maps it could be determined that an R-25 zone exists at the Southwesterly corner of the property. The approved plans do show a strip of land along the Westerly CT Page 1856 line of the property. This strip at all points is greater in depth than fifty feet. The planting of trees and shrubs, as indicated on the plan are to be made along the entire strip and the existed wooded area located within the strip is to remain and be protected during construction.
As stated in Parish of St. Andrew's Church v. Zoning Board of Appeals, supra, the court is not compelled to indulge in a microscopic search of technical infirmities. Plaintiffs have failed to establish any abuse of discretion on this claim.
e. Plaintiffs have also alleged that the SDP shows a fifty-six hundred (5,600) square foot retail store building without an off-street loading space as required by 15.2 of the Regulations. The site plan, however, does show sufficient off-street loading spaces to the rear of the building.
f. It is not in dispute that the property is located within the coastal boundary as defined by General Statutes 22a-94. Section 3.21(a) of the Zoning Regulations provides that:
 Property within the coastal boundary shall be subject to the coastal site plan review requirements and procedures in 22a-105 through 22a-109 of the General Statutes.
Section 3.21(c) of the Regulations also provides that:
 In cases where approval by any department of the state or city is required, said approval must be acquired prior to the submission of the coastal site plan.
It is also undisputed that the SDP, which provides for more than two-hundred parking spaces must be approved by the state traffic commission (STC) a department of the State.
Such approval was not obtained prior to submission or approval of the SDP. Plaintiff claims that in accepting and affirming the SDP prior to obtaining approval by STC, defendant commission failed to follow its own regulations and CT Page 1857 acted in abuse of the discretion vested in it.
In this connection SMM points out in its brief that General Statutes 14-311(c) allows the STC to postpone action on any application until after municipal approval. This issue came up at the public hearing. In addressing the question, Planning Director Warzecha advised defendant commission that STC would in fact postpone action and not grant any permit until all local approvals had been obtained. She pointed out that if the STC required a revision than the applicant would have to revise the plan and return to the local authority for modification. Warzecha also stated that these problems had been encountered before.
The final approval of the SDP, including the coastal site plan dated February 3, 1992, contained the following provision:
 "5. Any revisions to the site plan resulting from the state traffic commission review and permit shall be approved by the commission on the city plan."
The apparent conflict between requirements of 3.21(c) of the Zoning Regulations and procedure followed by STC under authority of the General Statutes would create an administrative grid lock if the regulations were followed literally.
As a general rule where, as here, a local regulation is in conflict with state law the local regulation must yield to the superior powers of the state. Richards v. Planning and Zoning Commission, 170 Conn. 318, 325 (1976). In dealing with this problem it would be appropriate for defendant commission to attempt to construe 3.21(c) harmoniously with General Statutes 14-311(c) so as to render an overall reasonable interpretation. Galvin v. Freedom of Information Commission, 201 Conn. 448, 456 (1986).
Defendant Commission accomplished this by considering the priority requirements of 3.21(c) as directory only and not mandatory. This was an appropriate interpretation. Legislative provisions designed to secure order, system and dispatch in proceedings are ordinarily held CT Page 1858 to be directory rather than mandatory. Such provisions prescribe what shall be done but do not invalidate action upon failure to comply. This is particularly true where as in section 3.21(c) the language is affirmative and unaccompanied by negative words. The regulation prescribed what should be done but did not invalidate action upon failure to comply. Hartford Principals' Supervisors' Association v. Shedd, 202 Conn. 492, 505 (1987).
It is significant that the defendant Commission had followed the same procedure with respect with STC permits in other cases. Burwell v. Board of Selectmen, 178 Conn. 509,518 (1979).
The procedure used by defendant Commission in conditionally approving the SDP prior to STC action cannot be found to be illegal or in abuse of discretion. It was a reasonable procedure not prohibited by the regulations, in fact it was the only practical way in which the SDP could be processed.
It is difficult to conclude how plaintiffs, or others who might be affected by SDP's approval, could be injured by the conditional approval. A problem would arise only if STC approval resulted in a change in the SDP. If that occurred the applicant would have to return to the commission. Plaintiffs could then be heard on any modification.
g. Plaintiffs' claim that the SDP does not comply with the provisions of 17.2 of the Regulations. This section entitled "General Considerations" requires that in approving any site plan the commission shall take into consideration the public health, safety, and general welfare as well as other considerations. Section 17.2.1 further provides that all proposed structures, equipment or materials shall be readily accessible for fire and police protection.
It is claimed that the SDP does not comply with 17.2 because the requirements of the fire department as set forth in the Fire Department Site Development Plan Checklist contained in defendant commission's Development Review Packet were not followed. Plaintiffs had listed a number of specific areas in which it is claimed the site plan deviates from the checklist in the review packet. CT Page 1859
The introductory page of the development packet indicates that it was prepared not by defendant Commission as a part of the Zoning Regulations but by the various municipal departments as an outline of the procedures to be followed during the review process.
The same page contains the following paragraph.
 "This development packet is a guide only. Depending on the development, procedures and items reviewed will vary, but we think that this packet will assist you with the process."
From this it must be concluded that the checklist found in the development packet was not part of the Zoning Regulations and it was never intended that strict compliance with every item in the packet would be required to satisfy 17.2 of the Zoning Regulations.
This was the interpretation followed by Planning Director Warzecha in her testimony before the Commission.
The record indicates that the Fire Marshal Bureau had certain initial reservations about the plan as first submitted. The note from Inspector Kirby, Deputy Fire Marshal to Assistant City Planner Grody dated 5 December, 1991, however, indicates that the plan had been revised and the complaints addressed properly. Planning Director Warzecha also indicated to the Commission that the fire department had signed off on the plan.
From the record it cannot be found that plaintiffs have proven that in approving the SDP defendant Commission violated the provisions of 17.2 of the Zoning Regulations.
h. Plaintiffs claim that the SDP, as approved, will result in a violation of 14.6 of the Zoning Regulations, which regulates activities within the flood plain or flood way, because it will result in work taking place within the flood plain without a special exception. The record, however, does not confirm this and it cannot be found to have been established. The only facilities within the protected area appear to be pre-existing sewer lines. CT Page 1860
i. Plaintiffs have also raised other claims that in approving the SDP defendant commission failed to consider the concerns of the city engineers as well as matters involving police and fire protection. Although in considering the SDP defendant commission must follow its own regulations. It does have limited discretion. The trial court cannot review the project and substitute its discretion for that of the local authority. As our supreme court stated in a similar case, "Because the local authority is close to the circumstances and conditions which create the problem and shape its solution, zoning authorities are given wide discretion in determining public need and the means of meeting it. Goldberg v. Zoning Commission, 173 Conn. 23, 27
(1977).
Considering the record and all evidence properly before the court it must be concluded that plaintiffs have failed to establish that defendant commission acted illegally, arbitrarily or in abuse of the limited discretion vested in it by determining that the SDP complied with applicable regulations and approving the SDP.
Accordingly, judgment is rendered for defendants affirming the action of defendant commission approving the SDP.
Purtill, J.