# INTERLUDE, INC. *v.* CATHERINE A. SKURAT, TAX COLLECTOR OF THE CITY OF DANBURY, ET AL.
## (AC 17634)

Lavery, C. J., and Schaller and Hennessy, Js.

(*One judge dissenting*)

Argued May 8, 2001—officially released January 1, 2002

*Monte E. Frank*, with whom, on the brief, were *Jonathan S. Bowman, Neil R. Marcus* and *David L. Grogins*, for the appellant (plaintiff).

*Peter N. Buzaid*, assistant corporation counsel, for the appellees (defendants).

*Opinion*

LAVERY, C. J. This matter is before us on remand from the Supreme Court. Previously, in *Interlude, Inc.* v. *Skurat*, 54 Conn. App. 284, 288–89, 734 A.2d 1045 (1999), rev'd, 253 Conn. 531, 754 A.2d 153 (2000), we concluded that action by the plaintiff, Interlude, Inc. (Interlude), seeking a refund for taxes it paid on real property was barred by the one year statute of limitations contained in General Statutes § 12-119.[1] The Supreme Court granted certification; *Interlude, Inc.* v. *Skurat*, 250 Conn. 927, 738 A.2d 657 (1999); on the issue of whether we had properly applied § 12-119 to this case. The Supreme Court held that "§ 12-119 is inapplicable to the present case because there is no issue regarding the assessed value of the property, and because Interlude did not own the property on the

---

[1] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation . . . ."

assessment date. Accordingly, the one year statute of limitations provided by § 12-119 is not applicable here and, therefore, does not bar Interlude's claim." *Interlude, Inc.* v. *Skurat*, 253 Conn. 531, 541, 754 A.2d 153 (2000). Accordingly, the Supreme Court reversed the judgment of this court and remanded the case to us for further proceedings. We reverse the judgment of the trial court.

We repeat here, for convenience, the stipulated facts set forth in our original decision, *Interlude, Inc.* v. *Skurat*, supra, 54 Conn. App. 285–86. "Interlude is a Connecticut nonprofit corporation that provides community based, integrated transitional housing, support and rehabilitation services to individuals who suffer from severe psychiatric disabilities. On September 24, 1992, Interlude took title to four properties located at 25, 27, 29 and 31 Grand Street in the city of Danbury, and recorded its deed on October 5, 1992. Each of the four properties consists of three condominium units; all but four of the units are used by Interlude for its clients for charitable purposes.

"At the time of Interlude's purchase of the property, the city exempted the property from taxation. The city notified Interlude of its exemption on July 2, 1993. The city thereafter billed Interlude for the remaining three quarters of the 1991 grand list and for five days of the 1992 grand list, which the city claims became due and payable on October 1, 1992, and January 1, April 1 and July 1, 1993.[2] Initially, Interlude did not pay these tax bills. On November 1, 1994, however, the city noticed a tax lien on the property. On January 15, 1995, Interlude paid to the city, under protest, the amount of $21,495.40 in taxes, interest and lien fees as well as an additional $2832.88 in attorney's fees to avoid a tax sale of the

---

[2] "Interlude did not file an appeal with the board of tax review with regard to these bills." *Interlude, Inc.* v. *Skurat*, supra, 54 Conn. App. 286 n.2.

property. Interlude then demanded reimbursement of the moneys it had paid to the city under protest, which was denied by the city. Interlude thereafter filed suit, seeking a declaratory judgment as to the meaning of a nonprofit organization's exemption from taxation pursuant to General Statutes § 12-81b and Danbury Code § 18-20, and demanding reimbursement of all moneys it had paid to the city to avoid a tax sale. The defendants [the city and its collector of taxes] pleaded by way of a special defense that Interlude's claims were untimely and were not permitted under General Statutes §§ 12-89, 12-118 or 12-119. The trial court rendered judgment, granting Interlude a reimbursement 'for any taxes it paid that accrued on or after [September 24, 1992, the date of acquisition].' The trial court did not, however, grant Interlude a reimbursement for any taxes it had paid that had accrued prior to its acquiring the property on September 24, 1992, which represents the bulk of the taxes Interlude had paid under protest."

Interlude claims on appeal that the trial court improperly construed and applied an exemption from taxation as allowed by General Statutes § 12-81b and as adopted by Danbury Code § 18-20. We agree with Interlude's claim and, accordingly, reverse the judgment of the trial court.

Prior to the trial of this matter, the parties entered into a stipulation of facts. One of the facts to which the parties stipulated is that "[t]he plaintiff . . . is a Connecticut [nonprofit] corporation organized exclusively for charitable purposes." The defendants in fact granted Interlude an exemption from property taxation effective on the date that the deed was recorded, October 5, 1992. There is thus no controversy between the parties as to the general proposition that Interlude's use of the property at issue qualifies it for an exemption

from taxation pursuant to General Statutes § 12-81 (7).[3] The only issue is whether that exemption applies only to taxes *assessed* after the exempt entity acquired the property or to all taxes *billed* by the defendant city of Danbury after the exempt entity acquired the property.

General Statutes § 12-81b[4] permits municipalities to provide, by ordinance, that the property tax exemption authorized by § 12-81 becomes effective as of the date of acquisition of the property to which the exemption applies and to provide for reimbursement of the tax-exempt organization for any tax paid by it *for a period subsequent to the date of such acquisition.* The defendant city did so by enacting Danbury Code § 18-20.[5] The defendants agree that pursuant to that ordinance, Interlude is entitled to a refund of property taxes for

---

[3] General Statutes § 12-81 provides in relevant part: "The following-described property shall be exempt from taxation . . . (7) Property used for scientific, educational, literary, historical or charitable purposes. Exception. Subject to the provisions of sections 12-87 and 12-88, the real property of . . . a corporation organized exclusively for . . . charitable purposes . . . and used exclusively for carrying out . . . such purposes . . . ."

[4] General Statutes § 12-81b provides: "Any municipality may, by ordinance, provide that the property tax exemption authorized by any of subdivisions (7) to (16), inclusive, of section 12-81 shall be effective as of the date of acquisition of the property to which the exemption applies and shall, in such ordinance, provide procedure for reimbursement of the tax-exempt organization for any tax paid by it for a period subsequent to said date and for any tax paid by the prior owner for a period subsequent to said date for which such organization reimbursed such owner on the transfer of title to such property."

[5] Danbury Code § 18-20 provides in relevant part: "The City of Danbury hereby adopts the provisions of Section 12-81b of the Connecticut General Statutes relating to the effective date of tax exemptions for certain organizations. Accordingly, the property tax exemption authorized by subsections (7) to (16), inclusive, of Section 12-81 of the Connecticut General Statutes shall be effective as of the date of acquisition of the property to which the exemption applies. The tax-exempt organization shall be reimbursed for any tax paid by it for a period subsequent to the date of such acquisition and shall also be reimbursed for any tax paid by the prior owner for a period subsequent to the date of such acquisition for which such tax-exempt organization reimbursed the prior owner upon the transfer of title to such property. . . ."

the period of September 24 through October 5, 1992, but insist that Interlude must pay the property tax bills for the second, third and part of the fourth quarters of the 1991 grand list, which became due and payable on October 1, 1992, and January 1 and April 1, 1993.

The essence of the parties' disagreement is over the proper interpretation of § 12-81b; specifically, when the exemption provided for in the statute takes effect and the parameters of that exemption.

Before turning to an analysis of the varying interpretations contended for by the parties, we recite our well settled standard of review. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Andresen*, 256 Conn. 313, 328, 773 A.2d 328 (2001), quoting *State* v. *Murray*, 254 Conn. 472, 487–88, 757 A.2d 578 (2000).

"Exemption from taxation is the equivalent of an appropriation of public funds, because the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of others. . . . This is true whether the relief from taxation be considered an exemption, as the legislature has described it, or results from a policy of considering . . . property not ratable for tax purposes." (Citation omitted.) *Snyder* v. *Newtown*, 147 Conn. 374, 386, 161 A.2d 770 (1960), appeal dismissed, 365 U.S. 299, 81 S. Ct. 692, 5 L. Ed. 2d 688 (1961).

By themselves, §§ 12-81 and 12-89[6] dictate that when a town prepares an assessment list after an entity exempt from taxation under any of the subdivisions of § 12-81 acquires property in the town, the town should omit that property from the tax rolls for the subsequent assessment. The legislature also enacted § 12-81b, however, which specifically authorizes municipalities, *at their option*, to provide by ordinance that the exemption would be effective as of the date of acquisition. The city exercised that option when it enacted Danbury Code § 18-20 containing the following key sentence: "The tax-exempt organization *shall be reimbursed for any tax paid by it for a period subsequent to the date of such acquisition* and shall also be reimbursed for any tax paid by the prior owner for a period subsequent to the date of such acquisition for which such tax-exempt organization reimbursed the prior owner upon the transfer of title to such property." (Emphasis added.)

The defendants' claim of entitlement to payment is based on their assertion that the tax bills for the second, third and fourth quarters based on the October, 1991 grand list relate to the annual period October, 1991, through September, 1992. Under that assertion, the second quarter bill was for the period of ownership from January through March, 1992; the third quarter bill was for the period of ownership from April through June, 1992; and the fourth quarter bill was for the period of ownership from July through September, 1992. Also

---

[6] General Statutes § 12-89 provides in relevant part: "The board of assessors of each town . . . shall inspect the statements filed with it and required by sections 12-81 and 12-87 from . . . charitable . . . organizations, shall determine what part, if any, of the property claimed to be exempt by the organization shall be in fact exempt and shall place a valuation upon all such property, if any, as is found to be taxable, provided any property acquired by any tax-exempt organization after the first day of October shall first become exempt on the assessment date next succeeding the date of acquisition. . . ."

under that assertion, those bills were, except for the last few days in September, 1992, for the period of ownership prior to Interlude's September 24, 1992 acquisition of the property and, therefore, prior to the effective date of the exemption. That assertion is, however, false. General Statutes § 12-142 provides in relevant part: "The legislative body of each municipality, upon approving any budget calling for the laying of a tax on property, shall determine whether such tax shall be due and payable in a single installment or in two semiannual installments or in four quarterly installments and shall, unless otherwise provided by law, designate the date or dates on which such installment or installments shall be due and payable, *subject to the provisions of section 7-383* . . . ." (Emphasis added.) General Statutes § 7-383 provides in relevant part: "The first installment *of the general property tax* levy of each complying municipality *for its fiscal year beginning the first day of July* . . . shall become due on the first day of such fiscal year . . . ."[7] It is clear from those statutes that the first property tax installment for a given fiscal year is payable on the first day of the fiscal year. In this case, the July, 1992 payment, which was paid by Interlude's seller, was for the period from July 1, 1992, through September, 1992. The quarterly tax bills at issue in this case were for the period October 1, 1992, through June 30, 1993, "a period subsequent to the date of [Interlude's] acquisition"; Danbury Code § 18-20; and therefore were not payable by Interlude.

The assessment of the property in question was based on its value on October 1, 1991. The mill rate applicable to the assessed property was set in May or June of 1992. The tax was payable in four quarters for the fiscal

---

[7] In their trial brief, the defendants stated that "Danbury collects its taxes on a fiscal year basis in quarterly installments, i.e., for the grand list of October 1, 1991, the taxes are collected in quarterly installments due on July 1, 1992, October 1, 1992, January 1, 1993, and April 1, 1993.

year July 1, 1992, through June 30, 1993. As the defendants state in their brief, "any tax bill paid or collected for a *time period subsequent to the date of acquisition* shall be reimbursed." (Emphasis in original.) Because pursuant to § 7-383 the property tax *for a municipality's fiscal year*, July through June, is payable beginning with the first installment of that fiscal year, all of the taxes at issue in this case were for time periods subsequent to the date of acquisition.

If, as the defendants contend, the "exemptions" provided by § 12-81b and § 18-20 of the Danbury Code are exemptions only from future assessment and not exemptions from paying the remaining installments from the previous assessment, § 12-81b and Danbury Code § 18-20 would be mere surplusage, adding nothing to the effect of exemption under § 12-89. Section 12-89 provides for the exemption in subsequent assessment years, while § 12-81b provides for an immediate exemption for the period subsequent to the date of acquisition. That is the clear meaning of the enabling statute and the ordinance enacted by the city.

In *Low Stamford Corp.* v. *Stamford*, 164 Conn. 178, 319 A.2d 369 (1972), our Supreme Court had occasion to interpret § 12-81a, which covers the situation reciprocal to that involved here, namely, the purchase of property by a taxable entity from an entity exempt from taxation. In that case, in which the plaintiff purchased the property at issue from an exempt entity, the Supreme Court stated that "[t]he assessed value of the property as of September 1, 1968, should be prorated from August 29, 1969, [the date the plaintiff acquired title] to September 1, 1969." Id., 184. In that case, the court interpreted the language of § 12-81a,[8] which

---

[8] General Statutes § 12-81a (a) provides: "The purchaser, his heirs, successors or assigns, of any property which, on the assessment date prior to such sale, was tax-exempt to any extent in accordance with the provisions of section 12-81 or with respect to which taxes for the current tax year were abated to any extent in accordance with the provisions of chapter 204, shall

required the nonexempt purchaser of tax exempt property to pay "a prorated share of taxes for the *tax year* in which the transfer took place." (Emphasis added.) The Supreme Court affirmed the trial court's interpretation of the words tax year to mean assessment year rather than the city's fiscal year. Id., 183–84. The nonexempt purchaser was therefore liable only for three days of tax from the 1968 assessment, and was thereafter liable for the taxes based on the 1969 assessment, which was payable beginning in July, 1970. That decision appears to have given the purchaser a discount for the period between September 1, 1969, through June, 1970.[9] The plaintiff was required to pay taxes for August 29 to September 1, 1969, pursuant to the court's decision, and then to pay taxes based on the 1969 assessment, which pursuant to § 7-383 were for fiscal year July, 1970, to June 1971. In this case, however, § 12-81b and the Danbury ordinance do not contain the words "tax year." We instead must determine whether taxes have been collected *for a time period subsequent to the date of acquisition*, and we conclude that the bills paid by Interlude under protest were for the time period beginning October 1, 1992, and ending June 30, 1993, and were therefore for a time period subsequent to the date of acquisition.

Our legislature has determined, as a matter of public policy, that charitable and other enumerated types of

be liable for the payment of municipal taxes on that portion of such property which was so exempt or with respect to which taxes were so abated, from the date on which the conveyance is placed on the land records of the town in which such property is situated, as provided in subsection (b) of this section, including a prorated share of taxes for the tax year in which the transfer took place. Such liability shall attach to the property as a charge thereon."

[9] The defendant city in *Low Stamford Corp.* had billed the plaintiff for a prorated share based on a fiscal year for the time period between August 29, 1969, to June 30, 1970, which was successfully challenged by the plaintiff. *Low Stamford Corp.* v. *Stamford*, supra, 164 Conn. 180.

organizations are exempt from the payment of real property taxes on the property they use for the purposes enumerated in the statute. The construction of § 12-81b that effectuates the legislature's stated policy of exemption is that urged by Interlude, namely, that it should be exempt from property taxes based on new assessments under § 12-89 and that it should be exempt from property taxes based on a prior assessment that are attributable to the period of time after the date it acquires the property under § 12-81b.

The judgment is reversed and the case is remanded with direction to render judgment granting the plaintiff a refund of all property taxes levied and collected from it by the defendant city on the properties described in the complaint, and costs and attorney's fees, with interest as provided by statute.

In this opinion HENNESSY, J., concurred.

SCHALLER, J., dissenting. This appeal concerns the interpretation of Danbury Code § 18-20, adopted pursuant to the enabling statute, General Statutes § 12-81b. Section 18-20 contains the following key provision: "The tax-exempt organization shall be reimbursed for any tax paid by it for a period subsequent to the date of such acquisition and shall also be reimbursed for any tax paid by the prior owner for a period subsequent to the date of such acquisition for which such tax-exempt organization reimbursed the prior owner upon transfer of title to such property." The majority interprets that provision to mean that the plaintiff taxpayer in this case is entitled to be reimbursed by the defendant city for all taxes paid by it to the city, including those that accrued prior to the plaintiff's acquisition of the property and which pertained to a period running from the previous assessment date, October 1, 1991, to the day before the taxpayer acquired the property.

The trial court correctly determined that under the plain meaning of General Statutes § 12-89, a tax exemption would not apply until the first day of October following the date the property was acquired. The court further reasoned that § 12-81b allows municipalities to modify the effective date of a tax exemption to the date of acquisition.

The city of Danbury, through Danbury Code § 18-20, adopted the modified date of tax exemption in General Statutes § 12-81b. The court concluded, construing the tax exemption sections strictly against the taxpayer, that Danbury Code "§ 18-20, the language providing for a refund to a tax-exempt organization for taxes paid for a period subsequent to the date of acquisition, refers to taxes accrued and owed past that date, not taxes that happen to have been paid past that date." (Internal quotation marks omitted.)

The majority's interpretation is not supported by the plain language of the code provision, and the enabling statute, § 12-81b, or by the statutory framework that governs assessment of property in Connecticut. The majority holds that an exempt taxpayer is not required to pay any taxes that happen to be owing after acquiring the property, even taxes validly assessed and accrued prior to acquisition.

"When interpreting a statute, courts should accord a statutory enactment its plain meaning." (Internal quotation marks omitted.) *Hyllen-Davey* v. *Plan & Zoning Commission*, 57 Conn. App. 589, 595, 749 A.2d 682, cert. denied, 253 Conn. 926, 754 A.2d 796 (2000). Nor may we, "by construction, read a provision into legislation that is not clearly stated therein." (Internal quotation marks omitted.) Id. The trial court adhered to those guiding principles of statutory construction.

Danbury Code § 18-20 has meaning and is not superfluous in that it extends the exemption to the taxpayer

for a period after purchase and before the next assessment date, at which time General Statutes § 12-89 becomes effective to deal with the exempt taxpayer's property. Without General Statutes § 12-81b, as adopted in Danbury Code § 18-20, the exempt taxpayer would have to wait until the next assessment date after purchase for any exemption to occur. See General Statutes § 12-89.

As the majority points out, there is no question that the plaintiff is entitled to an exemption from taxation pursuant to § 12-81 (7) and no question that the plaintiff is entitled to an exemption under § 12-89 as of the next assessment date following acquisition. The majority states the issue in the case as "whether [under Danbury Code § 18-20] that exemption applies only to taxes *assessed* after the exempt entity acquired the property or to all taxes *billed* by the defendant city of Danbury after the exempt entity acquired the property." (Emphasis in original.) The issue, in fact, is whether the exemption applies, as the city contends, only to taxes *accrued* with respect to the portion of the assessment period after the plaintiff acquired the property or whether, as the plaintiff contends, the exemption applies to all taxes paid by the plaintiff, including those that accrued with respect to the portion of the assessment period *before* the plaintiff acquired the property, when the taxes happen to be payable after the acquisition with regard to a portion of the city's fiscal year.

The Danbury Code and § 12-81b allow reimbursement of tax paid by the exempt organization "for any tax paid by [it] *for a period* subsequent to the date of such acquisition"; (emphasis added) Danbury Code § 18-20; and "for any tax paid by the prior owner *for a period* subsequent to the . . . date [of acquisition] for which such tax-exempt organization reimbursed the prior owner upon the transfer of title to such property." (Emphasis added.) Id. The language "for a period" has no meaning

unless it refers to a portion of the assessment period during which taxes accrue. As our Supreme Court stated when reviewing this case prior to remand, "the 'assessment date' is the foundation of municipal taxing power. . . . [I]t is necessary to consider the date of assessment as the appropriate date, both for purposes of valuation of taxable property and for determining whether property is 'taxable in the town' involved." *Interlude, Inc.* v. *Skurat*, 253 Conn. 531, 539, 754 A.2d 153 (2000) (interpreting General Statutes §§ 12-89, 12-111, 12-118 and 12-119). By its plain meaning, § 12-81b expressly provides an alternative exemption date, modifying the effective exemption from the assessment date to the acquisition date.

The statute and the code provision have meaning because they entitle the taxpayer to an exemption without waiting until the next assessment date. Any other interpretation would not give proper effect to the assessment period, on which municipal taxation is based, and would not give effect to the plain statutory language.

The interpretation of General Statutes § 12-81a by our Supreme Court in *Low Stamford Corp.* v. *Stamford*, 164 Conn. 178, 319 A.2d 369 (1972), undermines the majority's position. In *Low Stamford Corp.*, the Supreme Court addressed the reverse situation, involving the purchase of property by a nonexempt taxpayer from an exempt taxpayer. That court determined that the taxes *for the assessment year* should be apportioned on the basis of the acquisition date. The plaintiff was liable pro rata for taxes as assessed on the property for the period covering the date of acquisition to the new assessment. Id., 184–85. The Supreme Court interpreted the reference to tax year as meaning the period of time that runs from assessment date to assessment date, rather than the city's fiscal year. Although the ordinance in the present case does not use the term tax year, the

decision in *Low Stamford Corp.* supports the interpretation that the time period refers to a portion of the assessment year, the period following the assessment date, which clearly is "the foundation of municipal taxing power." *Interlude, Inc.* v. *Skurat,* supra, 253 Conn. 539.

Accordingly, I would affirm the judgment of the trial court.