INTERLUDE, INC. *v.* CATHERINE A. SKURAT,
TAX COLLECTOR OF THE CITY
OF DANBURY, ET AL.
(SC 16690)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 13—officially released October 7, 2003

*Peter N. Buzaid,* for the appellants (defendants).

*Monte E. Frank,* with whom, on the brief, were *Neil R. Marcus, Jonathan S. Bowman* and *David L. Grogins,* for the appellee (plaintiff).

*Opinion*

PALMER, J. The sole issue raised by this certified appeal is whether the plaintiff, Interlude, Inc., a tax-exempt organization, is liable for property taxes accruing prior to, but not becoming due until after, the plaintiff's acquisition of property. The defendant city of Danbury (city),[1] claims that the Appellate Court improperly concluded that General Statutes § 12-81b[2] and Danbury Code § 18-20[3] require the city to abate property

---

[1] Catherine A. Skurat, the tax collector of the city, also is a defendant. For ease of reference, we refer to both defendants as the city.

[2] General Statutes § 12-81b provides: "Any municipality may, by ordinance, provide that the property tax exemption authorized by any of subdivisions (7) to (16), inclusive, of section 12-81 shall be effective as of the date of acquisition of the property to which the exemption applies and shall, in such ordinance, provide procedure for reimbursement of the tax-exempt organization for any tax paid by it for a period subsequent to said date and for any tax paid by the prior owner for a period subsequent to said date for which such organization reimbursed such owner on the transfer of title to such property."

[3] Danbury Code § 18-20 provides: "The City of Danbury hereby adopts the provisions of Section 12-81b of the Connecticut General Statutes relating to the effective date of tax exemptions for certain organizations. Accordingly, the property tax exemption authorized by subsections (7) to (16), inclusive, of Section 12-81 of the Connecticut General Statutes shall be effective as of the date of acquisition of the property to which the exemption applies. The tax-exempt organization shall be reimbursed for any tax paid by it for a period subsequent to the date of such acquisition and shall also be reimbursed for any tax paid by the prior owner for a period subsequent to the date of such acquisition for which such tax-exempt organization reimbursed the prior owner upon the transfer of title to such property. This section shall be effective for all applicable transfers occurring on or after October 1, 1986."

taxes that have accrued prior to the date of a tax-exempt entity's acquisition of property. We conclude that § 12-81b provides only for an exemption from taxes accruing after the date of acquisition, rather than an abatement of previously accrued taxes. Accordingly, we reverse the judgment of the Appellate Court.

We glean the following undisputed facts and procedural history from the record and a joint stipulation of facts submitted by the parties to the trial court. The city assesses real property on October 1 of each year in accordance with General Statutes § 12-62a (a).[4] Pursuant to General Statutes § 12-142,[5] the city has deter-

---

Inasmuch as the relevant language of Danbury Code § 18-20 is identical in all material respects to the relevant language of § 12-81b, our analysis focuses solely on the construction of § 12-81b.

[4] General Statutes § 12-62a (a) provides: "Each municipality, as defined in section 7-381, shall establish a uniform assessment date of October first."

Although § 12-62a (a) was amended in 1997; see Public Acts 1997, No. 97-254, § 2, that amendment has no bearing on the city's assessment date.

[5] General Statutes § 12-142 provides: "The legislative body of each municipality, upon approving any budget calling for the laying of a tax on property, shall determine whether such tax shall be due and payable in a single installment or in two semiannual installments or in four quarterly installments and shall, unless otherwise provided by law, designate the date or dates on which such installment or installments shall be due and payable, subject to the provisions of section 7-383, in any municipality in compliance with requirements concerning the uniform fiscal year under chapter 110; provided the last installment of any such tax shall be due and payable not later than forty-five days before the end of the fiscal year in which the first installment thereof is due and payable, and provided any special tax shall be due and payable in a single installment. In case of failure of the legislative body to determine when such tax shall be due and payable or whenever the date on which such tax shall be due and payable has been determined, however, (1) the preparation and mailing of rate bills for such tax is delayed until after the date such tax is due or (2) such tax is not applicable to certain property until after the date such tax is due, such tax shall be due and payable, with respect to all property or property which becomes subject to tax after the date such tax is due, whichever is applicable, not later than thirty days following the date on which rate bills for such tax are mailed or handed to persons liable therefor. Except as otherwise provided by law, the several installments of a tax due in two or four installments shall be equal, but any taxpayer may pay two or more of such installments when the first is due."

mined that payment of the assessment amount will be made in four quarterly installments: July 1 and October 1 of the year following the assessment, and January 1 and April 1 of the subsequent year. The city's fiscal year runs from July 1 through the following June 30.

On October 1, 1991, the city assessed properties located at 25, 27, 29 and 31 Grand Street (property), which, at that time, were owned by Junco, Inc. (Junco), an entity that is not exempt from property taxes. Thereafter, Junco paid the first installment that was due on July 1, 1992. On September 24, 1992, Junco conveyed the property to the plaintiff, a nonprofit corporation that provides transitional housing, support and rehabilitation services to individuals with severe psychiatric disabilities. The plaintiff recorded the deed to the property on October 5, 1992. Thereafter, on July 2, 1993, the city notified the plaintiff that it had granted the plaintiff a tax exemption on the property pursuant to General Statutes (Rev. to 1993) § 12-81 (7).[6]

Thereafter, the city billed the plaintiff for the remaining three installments[7] of the October 1, 1991 assessment and for the five days running from October 1, 1992, the date of the following assessment, to October 5, 1992, the date on which the plaintiff recorded the deed to the property. Initially, the plaintiff did not pay this tax bill. On November 1, 1994, the city filed a tax lien on the property. On January 15, 1995, the plaintiff, under protest and in order to avoid a tax sale of the

[6] General Statutes (Rev. to 1993) § 12-81 provides in relevant part: "The following-described property shall be exempt from taxation:

\* \* \*

(7) Property used for scientific, educational, literary, historical or charitable purposes. Exception. Subject to the provisions of sections 12-87 and 12-88, the real property of . . . a corporation organized exclusively for . . . charitable purposes . . . and used exclusively for carrying out . . . such purposes . . . ."

[7] These installments were due on October 1, 1992, January 1, 1993, and April 1, 1993, respectively.

property, paid the city $21,495.40 in taxes, interest and lien fees and an additional $2832.88 in attorney's fees. The plaintiff then demanded reimbursement, which the city denied.

The plaintiff thereafter instituted the present action seeking: (1) a judgment declaring that, pursuant to § 12-81b and Danbury Code § 18-20, the plaintiff, as a tax-exempt successor in interest to Junco, was not liable for any taxes and, in particular, those becoming due after the date of acquisition; and (2) reimbursement of the money it had paid to the city under protest. The city pleaded, by way of special defenses, that the plaintiff's claim was time barred and that the claim was not authorized under General Statutes (Rev. to 1993) § 12-89[8] and General Statutes § 12-119.[9]

[8] General Statutes (Rev. to 1993) § 12-89 provides in relevant part: "The board of assessors of each [town or city] shall inspect the statements filed with it and required by sections 12-81 and 12-87 from . . . charitable . . . organizations, shall determine what part, if any, of the property claimed to be exempt by the organization shall be in fact exempt and shall place a valuation upon all such property, if any, as is found to be taxable, provided any property acquired between assessment dates by any tax-exempt organization shall first become exempt on the tax list next succeeding the date of acquisition. Any organization filing a tax-exempt statement, aggrieved at the action of the board of assessors, may appeal, within the time prescribed by law for such appeals, to the board of tax review. Any such organization claiming to be aggrieved by the action of the board of tax review may, within two months from the time of such action, make application in the nature of an appeal therefrom to the superior court for the judicial district in which such [town or city] is situated."

All references in this opinion to § 12-89 are to the 1993 revision unless otherwise stated.

[9] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in

The trial court concluded that, under § 12-81b, the plaintiff was entitled to reimbursement for the taxes that it had paid to the city that had accrued after the date of the plaintiff's acquisition of the property,[10] but not taxes that had accrued before the date of acquisition but that became due after that date.[11] The trial court rejected the plaintiff's contention that § 12-81b entitled the plaintiff to reimbursement for all taxes that it had paid, regardless of when those taxes had accrued. Therefore, the court denied the plaintiff's request for reimbursement of taxes that had accrued prior to its acquisition of the property on September 24, 1992, which comprised the bulk of the taxes that the plaintiff had paid under protest. The court ordered the city to reimburse the plaintiff only for its payment of the twelve days of taxes that had accrued subsequent to the acquisition date.[12] The court did not address the special defenses asserted by the city.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, claiming that the trial court improperly had construed the scope of the tax exemption prescribed by § 12-81b. *Interlude, Inc.* v. *Skurat*, 54 Conn. App. 284, 285, 734 A.2d 1045 (1999). The Appellate Court affirmed the judgment of the trial court without reaching the merits of the plaintiff's

the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. . . ."

[10] This twelve day period ran from September 24, 1992, the date of the plaintiff's acquisition of the property, to October 5, 1992, the date on which the plaintiff recorded the deed to the property.

[11] This amount included the three installments for the October, 1, 1991 assessment, which were due on October 1, 1992, January 1, 1993, and April 1, 1993, respectively, less any amount that the plaintiff had paid for the period between September 24 through September 30, 1992. The latter amount constituted a portion of the amount for which the trial court had concluded that the plaintiff was entitled to reimbursement. See footnote 10 of this opinion and accompanying text.

[12] See footnote 11 of this opinion.

claim, concluding that the plaintiff's action was barred by the one year statute of limitations contained in § 12-119.[13] Id., 287–89. The plaintiff thereafter filed a petition for certification to appeal to this court, which we granted. *Interlude, Inc.* v. *Skurat*, 250 Conn. 927, 738 A.2d 657 (1999). On appeal, this court concluded that the one year limitations period prescribed by § 12-119 was inapplicable to the plaintiff's action because the assessment value of the property was not at issue and because the plaintiff did not own the property on the date of the October 1, 1991 assessment. *Interlude, Inc.* v. *Skurat*, 253 Conn. 531, 541, 754 A.2d 153 (2000). We therefore reversed the judgment of the Appellate Court and remanded the case to that court for consideration of the plaintiff's claim that it was entitled to reimbursement for the taxes it had paid to the city under protest. See id.

On remand, the Appellate Court, with one judge dissenting, reversed the judgment of the trial court and concluded that the plaintiff was entitled to full reimbursement of all property taxes it had paid subsequent to its acquisition of the property. *Interlude, Inc.* v. *Skurat*, 67 Conn. App. 505, 515, 787 A.2d 631 (2002). Specifically, the Appellate Court framed the issue as whether the statutory exemption, which provides for reimbursement of taxes paid by the tax-exempt entity "*for a period* subsequent to [the acquisition] date"; (emphasis added) General Statutes § 12-81b; "applies only to taxes *assessed* after the exempt entity acquired the property or to all taxes *billed* by the [city] after the exempt entity acquired the property." (Emphasis in original.) *Interlude, Inc.* v. *Skurat*, supra, 67 Conn. App. 509. The Appellate Court effectively concluded that the term "period" in § 12-81b refers to any period after acquisition for which property tax installments in a fiscal year become due. See id., 511–13. The court

[13] See footnote 9 of this opinion.

noted that, "[b]ecause pursuant to [General Statutes] § 7-383[14] the property tax *for a municipality's fiscal year*, July through June, is payable beginning with the first installment of that fiscal year, all of the taxes at issue in this case were for time periods subsequent to the date of acquisition." (Emphasis in original.) Id., 513. Thus, the Appellate Court reversed the judgment of the trial court and remanded the case to that court with direction to render judgment directing the city to reimburse the plaintiff for its payment of those taxes. Id., 515. This certified appeal followed.[15]

The city claims that the Appellate Court improperly concluded that § 12-81b requires it to abate property taxes as of the date of the plaintiff's acquisition of the property. The city maintains that the taxes in question are for the 1991 assessment period of October 1, 1991, through September 30, 1992, and that the Appellate Court's decision effectively prevents it from collecting taxes that accrued on the property when it was owned by an entity not exempt from taxation. The city claims that § 12-81b does not require a municipality to *abate* previously accrued property taxes but, rather, merely provides a municipality with the option to advance the effective date of the exemption under §§ 12-81 (7) and 12-89 from the assessment date following acquisition— in this case, October 1, 1992—to the date the tax-exempt entity acquires the property.[16]

---

[14] General Statutes § 7-383 provides in relevant part: "The first installment of the general property tax levy of each complying municipality for its fiscal year beginning the first day of July, or the whole of such levy if such levy is not payable in more than one installment, shall become due on the first day of such fiscal year . . . ."

[15] We granted the city's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that . . . § 12-81b and Danbury Code § 18-20 require a municipality to abate the collection of previously assessed and levied property taxes effective as of the date of acquisition of the property by the nonprofit charitable organization?" *Interlude, Inc.* v. *Skurat*, 259 Conn. 925, 793 A.2d 251 (2002).

[16] We note that there is nothing in the record to indicate that the city is seeking to collect any taxes from the plaintiff that *accrued* after the date

Conversely, the plaintiff contends that § 12-81b cannot be construed to tie the exemption to the period of the assessment year, because that statute does not use the words "tax year" or "assessment." Rather, General Statutes § 12-81b provides for reimbursement of "any tax paid . . . ." Therefore, the plaintiff claims, the legislature necessarily intended to relieve tax-exempt entities of their obligation to *pay* all taxes after their acquisition of the property. In other words, the plaintiff contends that § 12-81b requires the abatement of any taxes that accrue before the acquisition of the property but that become due subsequent to the acquisition of the property. We conclude that the construction of the statute advanced by the city is the more sound interpretation.

Because this issue raises a question of statutory construction, our review is plenary. E.g., *Thames Talent, Ltd.* v. *Commission on Human Rights & Opportunities*, 265 Conn. 127, 135, 827 A.2d 659 (2003). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003).

---

on which it acquired the property. Thus, in light of the record before us, we presume that the city is seeking to collect only those taxes that *had accrued* prior to the plaintiff's acquisition of the property but that became *due* thereafter.

"The general rule of construction in taxation cases is that provisions granting a tax exemption are to be construed strictly against the party claiming the exemption. . . . Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms. . . . [Moreover] [w]e strictly construe such statutory exemptions because [e]xemption from taxation is the equivalent of an appropriation of public funds, because the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of [other taxpayers]. . . . The owners of tax-exempt property in the community derive the same benefits from government as other property owners but pay no property taxes for those benefits." (Citations omitted; internal quotation marks omitted.) *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, 262 Conn. 213, 220, 811 A.2d 1277 (2002). With these principles in mind, we turn to the merits of the city's claim.

As with all issues of statutory construction, we begin with the pertinent statutory language. General Statutes § 12-81b provides in relevant part: "Any municipality may, by ordinance, provide that the property tax exemption . . . shall be effective as of the date of acquisition of the property . . . and shall, in such ordinance, provide procedure for reimbursement of the tax-exempt organization for any tax paid by it *for a period subsequent to said date* . . . ." (Emphasis added.) It is clear under the statutory scheme that, had the city *not* adopted Danbury Code § 18-20 pursuant to § 12-81b, the plaintiff's exemption would have become effective, pursuant to § 12-89,[17] as of the assessment date following the plaintiff's acquisition of the property, i.e., October 1, 1992. Moreover, there is no dispute between the parties that § 12-81b renders the exemption applicable earlier than the assessment date following the acquisi-

---

[17] See footnote 8 of this opinion.

tion of the property, namely, any time subsequent to the date of acquisition of the property. The controversy centers on whether the term "for a period" contained in § 12-81b means that the plaintiff must be reimbursed for the period in which taxes are due, that is, the fiscal year, or for the period for which taxes have *accrued*, that is, the assessment year.

It is well settled that the assessment year, which commences on the first day of October, is the time period for which a property owner is liable for property taxes. See General Statutes § 12-172 (municipal tax liens "exist from the first day of October . . . in the year previous to that in which such tax, or the first installment thereof, became due"); *Ives* v. *Addison*, 155 Conn. 335, 340–41, 232 A.2d 311 (1967) (record owner of real property is liable for payment of property taxes on first day of assessment year). The municipality's fiscal year simply is the period in which a property owner may discharge this tax liability by making payment in full or in installments. See General Statutes § 12-142 (municipality designates date or dates on which property tax or installments thereof are due); cf. *Low Stamford Corp.* v. *Stamford*, 164 Conn. 178, 184, 319 A.2d 369 (1972) ("[t]he billing dates themselves are irrelevant to the determination of what is taxed and at what rate"). Therefore, although property tax installments are paid during the fiscal year, they necessarily correspond to taxable periods in the assessment year for which the property owner is liable. Indeed, this arrangement ensures that a municipality's budget expenditures for the fiscal year correspond with revenue projections from various sources, including property assessments. Thus, the relevant "period" to which § 12-81b refers is that portion of time between the date of acquisition of the property and the end of the assessment year in which the acquisition occurred.

We deem it a strained construction of § 12-81b to turn its provision for *reimbursement* into one of tax *abatement.* Had the legislature intended to require municipalities to abate taxes from the date of acquisition, it easily could have done so. Indeed, this state's tax statutes are replete with provisions in which the legislature expressly has set forth circumstances in which municipalities may, in their discretion, "abate" property taxes. See, e.g., General Statutes § 12-81m (abatement of up to 50 percent of taxes on property maintained as dairy farm, fruit orchard, wine grape vineyard, vegetable farm, nursery farm, tobacco farm or certain other types of farms); General Statutes § 12-81o (abatement of taxes on property of certain food manufacturing plants); General Statutes § 12-81p (abatement of taxes on property on which certain historic amusement theme parks are situated); General Statutes § 12-81q (abatement of taxes on property owned by entity that has acquired water company, but limited to cost of improvements to infrastructure and related property); General Statutes § 12-81r (abatement of taxes on contaminated real property undergoing remediation); General Statutes § 12-81t (abatement of taxes on information technology personal property); General Statutes § 12-81u (abatement of taxes on real and personal property of certain communications establishments); General Statutes § 12-81v (abatement of taxes on property of electric cooperatives); General Statutes § 12-81w (abatement of portion of taxes on property owned by local volunteer firefighters and certain other local volunteer emergency and civil preparedness personnel); General Statutes § 12-81x (abatement of taxes on certain property owned and occupied by surviving spouse of police officer or firefighter who dies while performing official duties); General Statutes § 12-81y (abatement of property taxes on school buses); General Statutes § 12-81z (abatement of taxes on prop-

erty of nonstock corporation providing classes on United States citizenship); General Statutes § 12-81aa (abatement of taxes on urban and industrial reinvestment sites); General Statutes § 12-124 (abatement of taxes and interest on delinquent taxes owed by "such persons as are poor and unable to pay the same or upon railroad companies in bankruptcy reorganization"); General Statutes § 12-124a (abatement of property taxes on primary residence occupied by owner to extent that taxes exceed 8 percent of owner's income); General Statutes § 12-125 (abatement of taxes on real and personal property of certain corporations). We generally presume that when the legislature repeatedly uses certain terminology and chooses not to use that terminology in a particular provision, it has intended a different meaning. *State* v. *Kirsch*, 263 Conn. 390, 418–19, 820 A.2d 236 (2003). Accordingly, we presume that the legislature had a purpose in choosing the term "exemption" rather than "abatement" in drafting § 12-81b. See, e.g., *In re Dean*, 246 Conn. 183, 194–95, 717 A.2d 176 (1998) (legislative intent to be determined by language actually used). Indeed, had the legislature intended for municipalities to authorize an *abatement* of property taxes upon acquisition by a tax-exempt organization, it likely would not have utilized such an indirect means as reimbursement to attain that result.

In determining the legislative intent of a particular statute, we also look to other relevant statutes governing the same or similar subject matter, for it is well established that "we consider the statutory scheme as a whole and presume that the legislature intended to create a harmonious body of law." *In re Michaela Lee R.*, 253 Conn. 570, 586, 756 A.2d 214 (2000). Therefore, § 12-81b should be construed to operate in a manner consistent with General Statutes § 12-81a,[18] which

[18] General Statutes § 12-81a (a) provides: "The purchaser, his heirs, successors or assigns, of any property which, on the assessment date prior to such sale, was tax-exempt to any extent in accordance with the provisions of

addresses the reverse situation of § 12-81b, namely, the conveyance of property by a tax-exempt entity to a nonexempt entity. General Statutes § 12-81a provides in relevant part: "(a) The purchaser . . . of any property which, on the assessment date prior to such sale, was tax-exempt . . . shall be liable for the payment of municipal taxes on that portion of such property which was so exempt . . . from the date on which the conveyance is placed on the land records of the town in which such property is situated . . . including a prorated share of taxes for the tax year in which the transfer took place. . . ." In *Low Stamford Corp.* v. *Stamford*, supra, 164 Conn. 183–84, we interpreted the term "tax year" in General Statutes (Rev. to 1972) § 12-81a (a) to mean assessment year. Thus, we determined that, upon the transfer of property from a tax-exempt entity to a nonexempt entity, the tax exemption applied to the period of time during the assessment year that the tax-exempt entity owned the property in question. See id., 184. Accordingly, we concluded that the defendant city of Stamford improperly had billed the nonexempt entity for the period from the date of its purchase of the property through the end of the city's fiscal year, a period that related back to the assessment year in which the tax-exempt entity owned the property. See id. We explained that "[a] tax bill payable on [a certain date] . . . bears no direct relationship to who owns the property on that date; rather it relates back to title and value as of [the prior assessment date]." Id. Although we recognize that § 12-81b, unlike § 12-81a, does not

section 12-81 or with respect to which taxes for the current tax year were abated to any extent in accordance with the provisions of chapter 204, shall be liable for the payment of municipal taxes on that portion of such property which was so exempt or with respect to which taxes were so abated, from the date on which the conveyance is placed on the land records of the town in which such property is situated, as provided in subsection (b) of this section, including a prorated share of taxes for the tax year in which the transfer took place. Such liability shall attach to the property as a charge thereon."

expressly refer to the "tax year" or assessment year, it is reasonable to conclude that the legislature intended the operative period of exemption under § 12-81b to be consistent with the period of exemption prescribed by § 12-81a. In so concluding, a tax-exempt entity's exemption from tax *liability* begins upon acquisition and ends upon transfer of the property.

The legislative history, although somewhat ambiguous, lends some support to our conclusion that § 12-81b is meant to operate within the tax year or assessment year rather than the fiscal year. Representative Clarence I. Platt, who, along with others, introduced the bill that contains what is now § 12-81b as amended, remarked that "[t]he tax on record between the day of conveyance and the end of the *tax year* is presently not covered." (Emphasis added.) 12 H.R. Proc., Pt. 5, 1967 Sess., p. 2187. Similarly, when speaking in favor of an amendment to that bill, Representative Platt noted that the legislation "provides for the rebatement of taxes pre-paid between the date of acquisition of the property and the end of the *tax year* . . . ." (Emphasis added.) Id., p. 2064. As this court previously has concluded, a "tax year logically must refer to the assessment year." (Internal quotation marks omitted.) *Low Stamford Corp.* v. *Stamford*, supra, 164 Conn. 183–84. Although Representative Platt also referred to the term "abatement" in his remarks,[19] we conclude that, in light of the frequent use of that term throughout our taxation scheme and its omission from § 12-81b, the legislature

[19] Representative Platt remarked that "this bill provides for property tax exemption by [e]leemosynary [o]rganizations. . . . The tax on record between the day of conveyance and the end of the tax year is presently not covered. Each session of the [l]egislature faces many requests of churches for abatement of this portion of the tax . . . [w]hich has practically always been granted. This [bill] gives the municipality the authority to abate the tax at the local level through regular ordinance procedure." 12 H.R. Proc., supra, p. 2187.

intended to provide for reimbursement rather than abatement.

Therefore, with due regard for the principle that provisions granting a tax-exemption embrace only what is strictly within their terms and are construed narrowly against the party claiming the exemption; e.g., *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport,* supra, 262 Conn. 220; we conclude that § 12-81b's provision for the *reimbursement* of taxes paid by a tax-exempt entity for periods subsequent to acquisition does not evince a clear legislative intent to authorize municipalities to *abate* taxes for a period prior to the tax-exempt entity's acquisition of the property. Rather, we are persuaded that § 12-81b simply provides a municipality with the option of establishing an earlier effective date for the tax exemption that otherwise is provided by General Statutes § 12-89, under which property acquired by a tax-exempt entity becomes exempt on the next assessment date after the date of acquisition. See General Statutes § 12-89 ("any property acquired by any tax-exempt organization after the first day of October shall first become exempt on the assessment date next succeeding the date of acquisition").

The plaintiff contends, however, that if we interpret § 12-81b merely to provide an exemption from taxation as of the date of acquisition, and not an exemption from the payment of the remaining installments from the previous assessment, we render § 12-81b superfluous because it would add nothing to the exemption provided under General Statutes § 12-89. We disagree. General Statutes § 12-89 provides for exemption in *subsequent* assessment years, whereas § 12-81b provides for an immediate exemption after the date of acquisition. Thus, as Judge Schaller noted in his dissenting opinion in the Appellate Court, "[w]ithout . . . § 12-81b, as adopted in Danbury Code § 18-20, the exempt taxpayer would have to wait until the next assessment date after

purchase for any exemption to occur. See General Statutes § 12-89." *Interlude, Inc.* v. *Skurat,* supra, 67 Conn. App. 517 (*Schaller, J.,* dissenting). Insofar as § 12-81b clearly allows a municipality, by ordinance, to advance the date that the exemption becomes effective under General Statutes § 12-89, we fail to see how § 12-81b is rendered superfluous.

Indeed, it is the construction advanced by the *plaintiff* that renders a portion of § 12-81b superfluous. Had the legislature intended what the plaintiff advocates, it simply could have provided that the tax-exempt entity shall be reimbursed for any tax paid subsequent to the acquisition date. Instead, General Statutes § 12-81b provides for reimbursement to the plaintiff "for any tax paid by it *for a period* subsequent to [the acquisition] date . . . ." (Emphasis added.) We generally reject a construction that renders any portion of a statute superfluous. See, e.g., *Segal* v. *Segal,* 264 Conn. 498, 507, 823 A.2d 1208 (2003).

The plaintiff further contends that public policy weighs in favor of an interpretation of § 12-81b that provides for a tax abatement because such a construction would facilitate the acquisition of property by charitable organizations. The plaintiff maintains that because tax-exempt charitable organizations use property for the benefit of the community, the legislature intends to free them of the burden of paying taxes after acquisition of the property.

We disagree that our construction of § 12-81b in any way thwarts the purpose underlying the special tax status that the legislature has bestowed upon charitable organizations. First, our interpretation furthers the goal of tax relief for charitable organizations inasmuch as it in no way affects a municipality's ability to advance the effective date of the exemption. Second, charitable organizations need not assume the tax liability that the

plaintiff assumed in the present case. "When a sale takes place, the parties are at liberty to adopt whatever method of apportionment or adjustment of taxes they may choose." *Ives* v. *Addison*, supra, 155 Conn. 339. The tax-exempt entity is not bound by the customary practice of adjusting taxes on the basis of the fiscal year but, rather, may negotiate with the seller to discharge the current tax liability.[20] See id. Indeed, the plaintiff could have negotiated with Junco to adjust the cost of the property at the closing by the amount of property taxes that it would be required to pay to the city.

Moreover, other public policy considerations militate against the construction of § 12-81b urged by the plaintiff. Such a construction may encourage fraud. For example, a nonexempt entity could transfer property

---

[20] In view of this adjustment practice, the plaintiff refers us to the last clause in § 12-81b, which provides for reimbursement to the tax-exempt buyer for any tax paid by the nonexempt seller for which the tax-exempt buyer reimburses the nonexempt seller at the closing. See General Statutes § 12-81b. The plaintiff claims that, inasmuch as full reimbursement under those circumstances is consistent with the common practice of adjusting taxes at closing in a real estate transaction, i.e., for the buyer to reimburse the seller for property taxes paid by the seller beyond the closing date, the legislature intended for the clause at issue in the present case to function in a similar manner. We first note that we previously have not construed the last clause of § 12-81b, which refers to the same period of reimbursement as the clause at issue in the present case, namely, "for [the] period subsequent to [the acquisition] date . . . ." General Statutes § 12-81b. Accordingly, the plaintiff's construction of the last clause of § 12-81b is dependent, in part, on our adoption of its construction of the same statutory language, which we have rejected. Indeed, under our construction, had the plaintiff paid Junco for the July 1, 1992 installment that Junco had paid prior to the plaintiff's acquisition of the property, it is clear that the plaintiff would not be entitled to reimbursement for those taxes. Moreover, although we are aware that, in the majority of Connecticut towns, including Danbury, the customary method for adjusting real property taxes at closing is based on the fiscal year, July 1 to June 30; e.g., W. Nathanson & J. Cipriano, Connecticut Closing Practice (2000) p. 16; that fact has no bearing on our construction of the statute.

to a tax-exempt entity merely to avoid tax liability.[21] Our construction, however, allows for the collection of taxes properly levied for the period during the assessment year that the nonexempt entity owns the property. Although the exemption contained in § 12-81b relieves the tax-exempt entity from future tax liability on the property, there simply is no persuasive reason to conclude that it relieves that entity from liability for taxes that have accrued on the property prior to the entity's acquisition thereof. To conclude otherwise effectively would remove the property from the tax list for a period of time longer than that during which the tax-exempt entity actually owns the property.

In the present case, the property was subject to taxation for all but seven days of the October 1, 1991 assessment year—from September 24, 1992, the date of the plaintiff's acquisition of the property, through September 30, 1992, the last day of the October 1, 1991 assessment year. Because the legislature has not provided otherwise, taxes must be paid for the period during the assessment year in which the property is owned by a nonexempt entity. Accordingly, we conclude that the Appellate Court improperly determined that § 12-81b

---

[21] Additionally, the plaintiff's construction could discourage municipalities from permitting payment of property taxes in multiple installments, an option more favorable to taxpayers. Under § 12-142, a municipality may require: (1) a single payment due on July 1 following the assessment date; two equal installments due on July 1 and January 1; or four quarterly installments due on July 1, October 1, January 1 and April 1. If a municipality were to require a single payment at the commencement of its fiscal year, it would recover the same amount in taxes under the construction of the statute proffered by either the city or the plaintiff, provided the tax-exempt entity assumes ownership of the property after the payment has been made. Under § 12-81b, the municipality merely would be required to reimburse the tax-exempt entity for the period of the assessment during which that entity owned the property, if that entity had reimbursed the nonexempt seller that paid those taxes. If a municipality, however, were to permit four installments, it would recover significantly less in revenues under the plaintiff's construction, as the present case demonstrates.

requires the city to abate property taxes that accrued prior to the plaintiff's acquisition of the property.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion BORDEN, KATZ and VERTEFEUILLE, Js., concurred.

ZARELLA, J., concurring. I agree with the majority's conclusion in this case but write separately only to reaffirm my continuing belief in the plain meaning rule as expressed in my dissenting opinion in *State* v. *Courchesne*, 262 Conn. 537, 597, 618–19, 816 A.2d 562 (2003) (*Zarella, J.*, dissenting).